## CURTIS v HUBBEL

Ohio Appeals, 6th Dist, Sandusky Co

No 247. Decided May 31, 1932

John A. Price, Toledo, for plaintiff in error.

Wm. A. Finn, Toledo, and I. G. Stout, Fremont, for defendant in error.

LLOYD, J.

Mrs. Curtis asks a reversal of the judgment rendered in the Court of Common Pleas on two grounds: first, that the verdict and judgment are manifestly against the weight of the evidence, and, second, that the trial judge erred in his charge to the jury.

A reading of the record discloses that the first ground of error is well-founded. The verdict and judgment are manifestly against the weight of the evidence.

In his general charge to the jury the trial court said:

"The defendant, in presenting his case, says he was confronted with a sudden emergency, in that there appeared in front of his car a pedestrian on his side of the road and that to avoid the pedestrian he had to swerve his car to the left, and that because of this sudden emergency he had to make a sudden decision as to what to do.

If you find this is true then it is proper to say to you that when a person, without his fault, is placed in a situation of danger he is not to be held to the exercise of the same care and circumspection that prudent persons would exercise where no danger is present; nor can it be said as a matter of law that he is guilty of negligence because he fails to make the most judicious choice between hazards presented, or that he would have escaped if he had chosen differently. The question in such case is not what a careful person would do under ordinary circumstances but what would he be likely to do, or might reasonably be expected to

do in the presence of such existing peril. Of course, if a person by his own fault and negligence places himself in a position of danger he is not excused because he is suddenly confronted with an emergency which requires a quick decision."

The question thus presented to this court is whether there is any evidence which ,would justify a jury in finding that Hubbel was confronted with an emergency as that term is legally defined.

What ordinarily careful and prudent persons would or would not do when confronted with an emergency requiring prompt and immediate decision might not and probably would not be what such persons would or would not do where no emergency existed, but the degree of care required is the same. It does not increase or diminish. It is always ordinary care, that degree of care which ordinarily careful and prudent persons are accustomed to exercise under the same or similar circumstances. In other words, if applied to the instant case and there was an emergency as claimed, such care as ordinarily careful and prudent persons are accustomed to exercise in a situation such as that in which Hubbel found himself.

Sec 6310-34, GC, provides:

"Where crosswalks or cinder paths parallel the public road or highway pedestrians shall not walk in, along or upon the vehicular traveled portion of such public road or h'ghway, except at crossing and crosswalks, except in cases where crossings or crosswalks are an unreasonable distance apart."

The place of the occurrence under discussion was in the open country. No crosswalks or cinder paths paralleled the highway. This pedestrian had a right, therefore, to walk along and upon the right side of the road and Hubbel was bound to anticipate such use of the highway by others and to be prepared to act accordingly.

No duty devolved upon Mrs. Schachtler driving her car on the easterly side of the road where she had a lawful right to be, to expect or assume that Hubbel would cross to that side of the road.

Sec 6310-1, GC, effective as amended July 21, 1925, requires that the forward lights of a motor vehicle, other than a commercial vehicle,

"shall, when the motor vehicle is in motion, throw sufficient light ahead to show any person, vehicle or substantial object upon the roadway straight ahead of the motor vehicle for a distance of at least 200 feet."

Sec 12614-2 GC as amended, effective July 19, 1923, provides that the driver of any motor vehicle upon a highway of the state in the night season upon the approach of another vehicle shall control the headlights thereon by dimming or otherwise so that at a distance of not less than 200 feet in front thereof no part of the intensified rays shall be visible more than 3½ feet above the surface of the highway and remain so until the approaching vehicle passes by. These two sections are not in conflict. One provides that the light shall be of sufficient brightness to distinguish objects on the highway ahead; the other, that when approaching another vehicle the intense rays shall not be reflected more than 3½ feet above the surface of the highway at the prescribed distance of 200 feet. Apparently these two sections are to be considered together and that whether dimmed or not the lights should be such as will permit objects 200 feet ahead on the highway to be seen by the driver of the car. Then we have §12603, GC, which was amended at the legislative session of 1929, becoming effective July 21, 1929, wherein, for the first time, appears the following:

"No person shall drive any motor vehicle upon any public road or highway at a greater speed than will permit him to stop within the assured clear distance ahead."

Secs 6310-1 and 12614-2, GC, in conjunction with §12603, GC, show the attempt and intent of the legislature to safeguard those lawfully upon a public road against injury by ,automobiles driven thereon, especially in the night season. The purpose of the above quoted portion of §12603 GC, is obvious and its language is explicit. It applies generally to all drivers of automobiles, whether using the highways of the state in the night season or in the daytime, and requires that the speed of the automobile shall at all times be such as to permit the driver to stop it within the range of his vision. If, when driving at night, the forward lights on his car do not throw sufficient light ahead to enable him to see a pedestrian lawfully upon the highway until he is within 8 feet of striking distance, then, since he is bound to anticipate the presence of the pedestrian, he must drive at such speed as will enable him to stop when he does see the pedestrian, and failure to do so is negligence per se. And if he veers to his left to avoid striking the pedestrian and

in so doing crosses to the other side of the center of the highway in front of an approaching automobile, he can not excuse this latter act on the theory that it was done in an emergency. In a sense, a situation such as is shown by the evidence creates an emergency, but it is an emergency caused by a violation of positive law, of which he who violates the law can not claim the benefit.

Our attention has not been called to any Ohio authorities which discuss that portion of §12603 GC, which we have been here considering. In Michigan a statute containing this same provision was enacted in 1927 (§5, Title 3, page 584, Public Acts, Michigan, 1927) and it was retained in the amending statute passed in 1929 (§4697, §5, Comp. Laws of Michigan, 1929, page 1850).

In Bowmaster v DePree Co., 252 Mich., 505, the third syllabus is:

"Automobile driver, who, on snowy, windy day, drove his car at greater speed than permitted him to bring it to stop within assured clear distance ahead, in violation of 1 Comp. Laws, 1929, §4697, resulting in collision with truck standing on right side of road, was guilty of negligence as matter of law."

At page 512 of the opinion the court says:

"The defendant was driving his automobile upon the highway at a speed greater than permitted him to bring it to a stop within the assured clear distance ahead, in violation of the plain provisions of the statute, and we think was guilty of negligence as a matter of law."

There is no ambiguity in the language used by the legislature in §12603 GC. The evident and unmistakable purpose was to compel every one driving a motor vehicle upon any of the highways of the state to respect the rights of others also lawfully using them. Its strict observance would prevent not only loss of life but also daily occurring injuries to person as well as property, which in number seem rather to increase than to diminish.

We conclude therefore that the evidence in the record does not disclose facts tending to show an existing emergency of which Hubbel can claim the benefit, and that it was error for the court to charge the jury on that subject.

For this reason and because the verdict and judgment are manifestly against the weight of the evidence, the judgment of the Court of Common Pleas is reversed and the cause remanded for a new trial.

WILLIAMS, J, concurs.

RICHARDS, J.

In my opinion the verdict and judgment are manifestly against the weight of the evidence, for which reason alone the judgment should be reversed. I therefore concur in the judgment of reversal.