SELMA LINDQUIST, Appellee, v. E. M. THIERMAN et al., Appellants.

No. 41613.

May 15, 1933.

R. G. Remley, and Putnam, Putnam, Langdon & Fillmore, for appellants.

E. H. Johnson, for appellee.

KINDIG, C. J.—The evidence is not materially conflicting. At the time of the events herein considered, the defendants operated a truck line out of Webster City. On the night of December 15, 1930, their employee, Bosley, was operating an empty truck in a westerly direction over highway No. 20 between Webster City and Fort Dodge. While thus traveling on this highway at a point about 7 miles east of Fort Dodge, the battery in the truck "went dead". This left Bosley without power to operate the truck and without lights to guard the same from on-coming vehicles. When he discovered the failure of the electrical apparatus, he utilized the momentum of the truck to drive the vehicle upon the north berm of the paved highway, where it stopped, facing in a westerly direction. He then sought and found a telephone, and thereby talked with headquarters at Webster City. In the course of time, Thierman, in accordance with the request over the telephone, arrived in his sedan. Upon his arrival, Thierman parked the sedan on the south berm of the highway. As he thus parked his sedan, the front thereof faced in an easterly direction. The sedan was thus parked on the shoulder, near but south of the paved portion of the highway. At the time the sedan was so parked,

the truck was north and somewhat east thereof, and located as before explained. Therefore the lights of the sedan pointed easterly so that they fell upon the truck. Apparently the purpose of this was to enable the defendant Thierman and Bosley to undertake the work of repairing the truck. Their efforts to repair the truck proved fruitless. They then attempted to turn the truck around and place it on the south side of the highway, back of the aforesaid sedan, in such a way that it might be attached thereto and then thereby towed to Webster City as a trailer. The truck facing as it was in a westerly direction while standing on the north berm of the highway, Thierman and Bosley contemplated that, when turned around and placed back of the sedan, it would then be headed eastward. There was a slight westerly slope in the highway. Thierman and Bosley so manipulated the truck as to get it into a position upon the highway pointing southeasterly and occupying a substantial portion of the north half of the paving. While they were engaged in this operation, they saw the lights of the plaintiff's car advancing rapidly toward them from the east. Bosley and Thierman then made frantic efforts to attract the attention of the driver of the on-coming car. It seems that Bosley ran eastward down the road and gesticulated to the best of his ability. The defendant, Thierman, jumped into his standing sedan and switched its lights on and off, and sounded its horn. Whereupon the plaintiff, Selma Lindquist, and her husband, G. L. Lindquist, according to their own testimony, were driving westward, toward the stalled truck, 35 or 40 miles an hour. They saw the light of Thierman's standing sedan, and supposed it was approaching them from the west. Hence the plaintiff's husband, who was driving the car in which the plaintiff was approaching from the east, claims to have been so blinded by the lights of the sedan, which were cast easterly over the highway, that he did not see or suspect the unlighted truck. As before stated, the truck, when finally abandoned by Thierman and Bosley, was located westerly from the sedan. This final position of the truck resulted from the attempt to turn it around. According to their contentions, the plaintiff and her husband did not see or suspect the presence of the truck until they were within 50 feet thereof. It was then too late to avoid the collision, and their car struck the side of the truck head on. The plaintiff sustained an injury to her knee. Also the car, a Hupmobile, in which the plaintiff and her husband were riding, was damaged to the amount of $163. Because the plaintiff's husband owned the Hupmobile, he assigned

his claim for the damages to her. Wherefore the plaintiff sues in two counts. In the first count she claims as assignee of her husband $200 as damages to the Hupmobile. Under the second count she sues for $1,000 damages for personal injury to herself.

After a trial to a jury, that body rendered a verdict of $200 in the plaintiff's favor. Judgment was duly entered on the verdict. An appeal was therefore taken to this court by the defendants. Their claim is that the trial court erred in submitting to the jury the question of the plaintiff's contributory negligence. This is true, the defendants contend, because the plaintiff's negligence is such as to bar her recovery. It may be noted here that the plaintiff pleaded that she and her husband jointly own the Hupmobile in which they were riding. She was occupying the front seat with her husband, who was driving at the time of the accident. In view of the form of allegation at this point, we have no need to distinguish between the alleged contributory negligence of the husband and the wife. Throughout her petition, the plaintiff claims that she and her husband were operating the automobile in which they were riding. According to the allegations of the plaintiff's petition, therefore, she and her husband were engaged in a joint or common enterprise. They both, according to the pleadings, participated jointly in the operation of the motorcar which carried them over the highway. The husband's negligence, then, in the execution of the common enterprise, became the contributory negligence which defeated the wife's recovery. Payne v. Chicago, R. I. & P. R. Co., 39 Iowa 523; Nesbit v. Town of Garner, 75 Iowa 314, 39 N. W. 516, 1 L. R. A. 152, 9 Am. St. Rep. 486; Carpenter, etc., v. Campbell Automobile Co., 159 Iowa 52, 140 N. W. 225; Cram, Adm'r v. City of Des Moines, 185 Iowa 1292 (local citation 1299), 172 N. W. 23.

For convenience we shall refer to the husband and wife as the "plaintiffs". Manifestly under the undisputed record, the plaintiffs failed to comply with the requirements of section 5029 of the 1931 Code. This is true because they were not able to bring their Hupmobile to a stop "within the assured clear distance ahead". Their justification for such failure is that they were blinded by the bright lights on Thierman's sedan. Thierman's sedan, as before stated, was standing on the south berm of the highway, facing eastward. It is claimed by the plaintiffs that Thierman's sedan cast a light diagonally across the highway. So the plaintiffs claim they thought the sedan was approaching them and were thereby to some extent thrown

off their guard. They inconsistently contend also that, if the lights of the sedan had been cast due east parallel with the highway, they would have seen the unlighted truck which occupied the north half of the paving.

As before explained, the driver, who is the plaintiff's husband, claims to have been blinded by the lights on the standing sedan. The fact that the lights from Thierman's standing sedan may have shone diagonally is not the real reason why the plaintiff's husband did not see the standing sedan. On the other hand, the plaintiff's husband did not see the standing sedan because of the bright lights thereon. While thus blinded, the plaintiff's husband drove for a long distance before he collided with the defendants' truck. If the plaintiffs did not stop their car within the assured clear distance ahead, they violated section 5029 of the 1931 Code. Wosoba v. Kenyon, 215 Iowa 226, 243 N. W. 569. Section 5029 requires the driver of a motor vehicle to stop "within the assured clear distance ahead". According to section 5029 above named, it is necessary that

"any person driving a motor vehicle on a highway shall drive the same at a careful and prudent speed not greater than nor less than is reasonable and proper, having due regard to the traffic, surface and width of the highway, * * * and no person shall drive any vehicle upon a highway at a speed greater than will permit him to bring it to a stop within the assured clear distance ahead." (Italics are ours.)

This statute has been before the court upon several occasions, but it has not been necessary before to define the term "within the assured clear distance ahead". The plaintiffs rather inconsistently argue that they would have seen the truck had there been a light on the same. Such statement is contrary to their pleadings and the testimony that they did not see or anticipate the truck because of the blinding headlights on the sedan. In any event, the statute above quoted required the plaintiff and her husband to so control their car as to be able to stop it within the assured clear distance ahead. Many courts have considered the duty of drivers, under such circumstances, because of statutory requirements and because of the general law independent of the statute.

According to the Michigan supreme court, in Spencer v. Taylor, 219 Mich. 110, 188 N. W. 461, reading on page 462:

"It is well settled that it is negligence as a matter of law to drive an automobile along a public highway in the dark at such speed that it cannot be stopped within the distance that objects can be seen ahead of it. * * * It is said in Huddy on Automobiles (5th Ed.) p. 377: 'As was said in one case: "It was negligence for the driver of the automobile to propel it in a dark place in which he had to rely on the lights of his machine at a rate faster than enabled him to stop or avoid any obstruction within the radius of his light, or within the distance to which his lights would disclose the existence of obstructions. * * * If the lights on the automobile would disclose obstructions only 10 yards away, it was the duty of the driver to so regulate the speed of his machine that he could at all times avoid obstructions within that distance",—citing West Cons. Co. v. White, 130 Tenn. 520, 172 S. W. 301'."

Speaking of a somewhat similar statute, the Ohio Court of Appeals, in Curtis v. Hubbel, 42 Ohio App. 520, 182 N. E. 589, reading on page 592, said:

"Section 6310-1 and section 12614-2, General Code, in conjunction with section 12603, show the attempt and intent of the legislature to safeguard those lawfully upon a public road against injury by automobiles driven thereon, especially in the night season. The purpose of the above-quoted portion of section 12603 is obvious, and its language is explicit. It applies generally to all drivers of automobiles, whether using the highways of the state in the night season or in the daytime, and requires that the speed of the automobile shall at all times be such as to permit the driver to stop within the range of his vision. If, when driving at night, the forward lights on his car do not throw sufficient light ahead to enable him to see a pedestrian lawfully upon the highway until he is within 8 feet of striking distance, then, since he is bound to anticipate the presence of the pedestrian, he must drive at such speed as will enable him to stop when he does see the pedestrian, and failure to do so is negligence per se."

While considering this question, the South Dakota Supreme Court, in Fulker v. Pickus, 241 N. W. 321, reading on page 323, declared:

"A careful review of all the evidence and according to respondent's own version and viewing his testimony in the most fav-

orable light in which he states that he was blinded by a headlight and thereafter permitting his car to proceed at a speed to what he thought was a safe rate of speed when a moment before he was driving from twenty-five to thirty miles an hour while the light blinded him and continuing to drive after suffering the blinding effects for some 150 to 200 feet until he struck the tractor, made him guilty of contributory negligence as a matter of law."

Upon the same subject, the Vermont Supreme Court, in Steele v. Fuller, 104 Vt. 303, 158 A. 666, reading on page 668, said:

"This court has frequently said that motorists on the public highways have equal and reciprocal rights to the use thereof. The legal standard of care required of them is unvarying and alike at all times—that of a prudent man under all circumstances; but experience has led the courts to adopt, and the legislatures to enact, certain rules of diligence which are intended to standardize the rights and duties of users of the highways. These rules are additional factors to be considered in a given situation by which negligence may be measured and determined between conflicting claimants exercising a common right, and they may be determinative in many cases. * * * One rule is that there is a duty at all times imposed upon the operator of a motor vehicle to maintain a lookout for persons and property on the highway, and to use reasonable care to avoid inflicting injuries on such persons or property, Smith v. Gould, 110 W. Va. 579, 159 S. E. 53; and he is chargeable with knowledge of objects in the highway which are in plain view. Harrington v. Rutland R. Co., 89 Vt. 112, 119, 94 A. 431; McDonald v. Yoder, 80 Kan. 25, 101 P. 468. Another rule is that one who drives an automobile along a public highway in the dark must drive at such a speed that it can be stopped within the distance that can be seen ahead of it, i. e., within the range of its headlights."

In harmony with the foregoing discussions is the doctrine announced by the Utah Supreme Court in Dalley v. Mid-Western Dairy Products Co., 15 P. (2d) 309, reading on page 312:

"The only reasons assigned by plaintiff for his failure to discover the truck sooner was because it was without lights and was painted yellow. The law imposed upon him the duty of having such lights as would enable him to discover objects without

as well as those with lights. If his lights would not reveal unlighted objects at the prescribed distance, he was negligent. Some of his witnesses testified that part of the truck was painted red. The legislature having prescribed that the front lights of an automobile in use upon public highways of this state shall be of sufficient candle power to render all substantial objects clearly discernible at a distance of 200 feet, it is not within the province of the courts to carve out an exception to the law because of the color of the object involved in a given case. . The claim that an operator of an automobile should be excused from discovering a substantial object directly in front of him because it was painted yellow or yellow and red, finds no support in law and is, as we believe, without any foundation in fact."

The following cases sustain the foregoing pronouncements: Fisher v. O'Brien, 99 Kan. 621, 162 P. 317, L. R. A. 1917F, 610; Page v. Neiland, 40 Ohio App 141, 178 N. E. 710; Pennsylvania Railroad Co. v. Huss (Ind. App) 180 N. E. 919; Devine v. Chester, 144 A. 322, 7 N. J. Misc. 131; Kakunis v. Ogden Rapid Transit Co., 63 Utah 4, 221 P. 853; Lauson v. Town of Fond du Lac, 141 Wis. 57, 123 N. W. 629, 25 L. R. A. (N. S.) 40, 135 Am. St. Rep. 30; Serfas v. Lehigh & N. E. R. Co., 270 Pa. 306, 113 A. 370, 14 A. L. R. 791; Lett v. Summerfield & Hecht, 239 Mich 699, 214 N. W. 939; Bowmaster v. Wm. H. De Pree Co., 252 Mich. 505, 233 N. W. 395.

Reading the Iowa statute under consideration in the light of the modern trend of legislation relating to automobiles, as indicated by the foregoing cases, the phrase "within the assured clear distance ahead" may be defined readily. Underlying the legislation is the idea of protecting travelers upon the highway. An automobile, when in operation and not properly controlled, may cause great injury to human beings. This machine has killed many people and has injured many more. At no time should an automobile be operated upon the public highways when the driver cannot see ahead for a distance which will enable him to bring his car to a stop without injuring any one. The automobile driver should not "take a chance" or "trust to luck". Wosoba v. Kenyon, 215 Iowa 226, 243 N. W. 569, supra. While taking a chance, or trusting to luck, he may injure or kill a human being or destroy the property of another. To avoid such catastrophe, the legislature required that

the operator drive his automobile at such a speed as to enable him to stop it "within the assured clear distance ahead", and thereby avoid injury or death to human beings and the destruction of property. Consequently, it is evident that the words "within the assured clear distance ahead", as used in the statute, signify that the operator of the automobile, when driving at night as well as in the day, shall at all times be able to stop his car within the distance that discernible objects may be seen ahead of it. To illustrate, a driver of an automobile at night, as well as in the day, in order to stop within the assured clear distance ahead, must be able to timely discern a man, a horse, a cow, or another vehicle; whereas such driver of the automobile might or might not discern a thin wire or a small stake in time to stop within the assured clear distance ahead. If, then, the driver of an automobile, because of the defective lights, cannot see more than 10 feet ahead of his car, he must so control the same that he can stop it if necessary within such radius of the lights.

"This duty does not extend so far as to require that it must always be possible to bring the car to an immediate stop on the sudden arising of a dangerous situation which the driver could not reasonably have anticipated." Bowmaster v. William H. De Pree Co., 252 Mich 505, 233 N. W. 395, 397, supra.

Jeck v. McDougall Construction Company, 216 Iowa 516, 246 N. W. 595, is distinguishable from the case at bar and the rule just announced. There was involved in the Jeck case a *peculiar machine*. The *"catwalk"* on the cement mixer was fastened to the side thereof, and extended over the pavement. Because of the peculiar construction, the catwalk, the jury could find, was partly hidden by the rest of the machine. It was somewhat difficult for the approaching automobile driver, under the circumstances, to see the catwalk until he was very near the machine to which it was attached. According to the Jeck opinion, the machine, including the catwalk, was 11 feet wide. Approaching motorists seeing the machine, the jury might find, would ordinarily feel that they could safely pass on the other half of the pavement. Moreover, in the Jeck case there was a motorist approaching near the catwalk from the opposite direction. So, because of the obscure catwalk and the motorist approaching from the opposite direction, we said in the Jeck case that a jury question was presented on the plaintiff's contributory

negligence. As explained and limited in this opinion, the Jeck case is consistent herewith.

By some courts it is suggested that the driver of the automobile may consider, when controlling his car, that others on the highway will obey the law. It was so stated in the Jeck case. Generally speaking, the operator of an automobile may assume that other drivers of cars will obey the law. Hogan v. Nesbit, 216 Iowa 75, local citation 82, 246 N. W. 270; Jelsma v. English, 210 Iowa 1065, 231 N. W. 304; Lein v. John Morrell & Co., 207 Iowa 1271, 224 N. W. 576; Wolfson v. Jewett Lumber Co., 210 Iowa 244, 227 N. W. 608, 230 N. W. 336; Wambeam v. Hayes, 205 Iowa 1394, 219 N. W. 813. So far as the statute under consideration, however, refers to the lights of automobiles in the nighttime, the rule that a driver of a car can assume that others on the highway will obey the law is slightly, if at all, material. As before explained, the statute under consideration is a safety regulation. The definition above adopted requires that the operator of the automobile shall at all times be able to stop his car within the distance that discernible objects may be seen. Therefore, under the many cases above cited, the operator of an automobile must thus control his car, even though there are unlighted vehicles on the highway. There are many reasons why this is true. For instance, section 5048 of the 1931 Code provides:

"The operator of any motor vehicle may proceed toward his destination in a cautious and careful manner in the event of a failure of one or more of his lights to operate, but he shall be deemed guilty of a violation of the foregoing provisions, unless he puts his lights in order at the first reasonable opportunity."

See, also, Sergeant v. Challis, 213 Iowa 57, 238 N. W. 442; Muirhead v. Challis, 213 Iowa 1108, 240 N. W. 912.

In Kisling v. Thierman, 214 Iowa 911, 243 N. W. 552, it was held that the operator of an automobile may thus proceed upon the highway even though the tail-light on the car is not lighted. So, in the event considered in the Kisling case, the operator who travels upon the highway in the nighttime with defective lights is not violating the law, but is complying therewith when traveling to his destination. An on-coming car following a vehicle without a rear light, as contemplated in the Kisling case, would not be protected by assuming that there would be lights on the forward vehicle, as

ordinarily required by law. As before seen, there is an exception provided for in the statute quoted. Hence it is necessary for the operator of a vehicle on the highway in the nighttime, as well as in the daytime, to so control his car that he can stop within the assured clear distance ahead, regardless of whether or not there are lights on the forward vehicle. Also a vehicle fully equipped with lights may proceed along the highway until suddenly, without the fault of the operator, the lights refuse to function and the vehicle is enveloped in darkness. Before the operator of the vehicle in such event could effectively warn an approaching automobile, there might be a collision if the operator of the on-coming vehicle depended upon the lights of the forward vehicle. Then, in the event contemplated, it is plain that the driver of the on-coming vehicle must so operate his car that he may stop the same within the range of his lights.

Moreover, the chapter under consideration relates to motor vehicles and horse-drawn vehicles, requiring lights in the night-time. But, regardless of that, there lawfully may be, and frequently are, animals upon the highway not attached to vehicles. A traveler in a motor vehicle, therefore, must contemplate that there may be animals lawfully upon the highway in the nighttime. In such event, the operator of the motor vehicle must be able to see the animals and stop the motor vehicle, if necessary, within the assured clear distance ahead. Likewise, a pedestrian has a right to lawfully walk upon the public highway in the nighttime. This fact must be contemplated by the operators of motor vehicles.

As shown by some of the cases above cited, it was the duty of the operator of the motor vehicle to so control his car that he could see and avoid running into pedestrians. Under the many circumstances above contemplated, it is obvious that the operator of a motor vehicle, in contemplation of the statute here involved, cannot rely alone upon seeing tail, or other, lights of motor vehicles ahead of him on the highway. Within the contemplation of the statute under consideration, the driver of the motor vehicle must control his automobile so that he may stop within the assured clear distance ahead when there are no tail-lights on the vehicle ahead, as well as when there are such lights thereon. It was said in Steele v. Fuller, 104 Vt. 303, 158 A. 666, supra, by the Vermont Supreme Court, on pages 667 and 668:

"While the plaintiff had the right to assume that other motorists would not obstruct the highway unlawfully, and would show the statutory lights if they stopped, *he could not for that reason omit any of the care that the law demanded of him.*"

Therefore, when the plaintiffs in the case at bar proceeded along the highway in question, it was their duty to so drive and control the vehicle that they could stop within the assured clear distance ahead. That means, as before said, that the plaintiffs should at all times be able to stop their car within the distance that discernible objects could have been seen by them.

Manifestly, under all the authorities above cited, the truck with which the plaintiff's car collided was a discernible object, within the meaning of the statute. Obviously, therefore, the plaintiff's violation of the statute contributed to the accident and injury. Because of such violation of the statute, the plaintiffs, thus engaged in a common enterprise, were guilty of contributory negligence as a matter of law. Wosoba v. Kenyon, 215 Iowa 226, 243 N. W. 569, supra; Kisling v. Thierman, 214 Iowa 911, 243 N. W. 552; Greenland v. City of Des Moines, 206 Iowa 1298, 221 N. W. 953; Peckinpaugh v. Engelke, 215 Iowa 1248, 247 N. W. 822.

The judgment below accordingly must be, and is hereby, reversed.—Reversed.

All justices concur.