**McFADDEN, Admx., Plaintiff-Appellee, v. BREUER TRANSPORTATION CO., Defendants-Appellants.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 21984.   Decided January 3, 1951.

M. L. Bernsteen, Jos. L. Sweeny, Cleveland, for plaintiff-appellee. ·

Squire, Sanders & Dempsey, Cleveland, for defendants-appellants.

(CONN, PJ, CARPENTER, J, FESS, J, of the Sixth Appellate District, sitting by designation in the Eighth District.)

## OPINION

By FESS, J:

Appeal on questions of law from a judgment entered by the court without the intervention of a jury for the plaintiff in the sum of $10,000.00.

The only question to be determined upon the appeal is whether plaintiff's decedent, while driving his automobile, was guilty of contributory negligence as a matter of law in colliding with a roll of steel upon the highway.

The action was brought for wrongful death. Jury was waived and the case tried to the court. Defendants admitted negligence proximately contributing to the death and it was agreed that the sole question to be determined by the court was whether the decedent was guilty of contributory negligence as a matter of law. It was further stipulated that in the event of a finding adverse to the defendant, judgment should be entered for plaintiff in the sum of $10,000.00. Upon the trial the court found that the question of defendant's contributory negligence was one of fact for the jury, and judgment was entered for the plaintiff in the agreed amount.

Upon a dark night, with no lights (except presumably his headlights) surrounding the scene, plaintiff's decedent drove his car into a roll of steel lying within his lane of travel with such force that he and two companions were killed and his car demolished. The roll was a coil of strip steel weighing 13,410 pounds. The width across its face was 34 inches and its diameter 3 feet 11 inches. After the accident, the roll was lying upon its base with the hole on the inside vertical, like a "doughnut" so that as it rested on the highway it presented an object 34 inches high and almost four feet wide. The coil was resting two and one-half feet east of the center line in the northbound traffic lane,—the direction in which the decedent was driving. The demolished automobile was lying 69 feet north of the coil in the ditch on the east or right-hand side of the road proceeding north. There were no skid-marks on the pavement but there were marks made by the automobile on the berm where it went through the dirt toward the point where it stopped. A truck driver proceeding 40 miles per hour testified that a few minutes before arriving at the scene of the accident decedent's car had passed his truck, that he observed the roll of steel when about 150 feet from it, but on account of the roughness of the highway was unable to stop his truck in time to avoid striking the steel with the bumper of his truck.

The highway in the vicinity of the collision was 20 feet wide and was straight, but 300 feet south of the roll of steel was a knoll and the road was slightly downgrade from the knoll to the point of collision. Decedent, therefore, travelled slightly downgrade on an unobstructed straight but rough road for a distance of 300 feet.

The color of the steel in contrast with that of the highway is in dispute. Defendants' testimony tends to show that the color of the steel was gray in contrast with the black highway. Plaintiff's testimony tended to show that the color of the steel was identical with that of the road. Plaintiff, the

decedent's mother, who went to the scene of the accident that night, was satisfied that if the roll had been in front of her son's automobile he would have seen it if his lights were good. She also said that while riding with her son a few nights before the accident his headlights were sufficiently brilliant to disclose a cat in his path.

A photograph of the steel roll disclosed that it shined or glistened in the reflection of the flash bulb, but it appears that the picture was taken a few feet away from the roll so that the only credible evidence of reflection from headlights is the testimony of the truck driver that he saw the roll when he was about 150 feet from it. A sixteen year old boy testified that he was in his house 300 feet from the point of collision, heard the crash and in looking through the window saw a car roll into the ditch and also saw a gray outline, something in the middle of the road, "looked lighter than the road,— could just barely see it." Since the boy also said there were no lights of any character surrounding the scene at the time he looked the trier of the facts could well disbelieve this testimony. There is no testimony relating to the time during which the steel remained a static object on the highway and one of the contentions of the plaintiff is that the roll of steel could have rolled off of defendant's truck into the path of decedent's automobile.

Sec. 6307-21 GC, provides in part:

"No person shall drive any motor vehicle * * * upon any street or highway at a greater speed than will permit him to bring it to a stop within the assured clear distance ahead."

Sec. 14 of the Act of May 11, 1908, incorporated the "reasonable and proper"—"having regard" principles, and Sec. 15 of the Act prescribed speed limits. Violation of the sections was deemed prima facie evidence of a misdemeanor. Sec. 14 became Sec. 12603 of the General Code of 1910. The reasonable and proper rule was re-enacted in various forms in 1913 (103 O. L. 161), and 1919 (108 O. L. Pt. 1, 471) and in 1923 (110 O. L. 138). In the 1923 Act "reasonable and proper having regard" etc., was provided in §12603 GC and without due regard for the safety of pedestrians and drivers was provided in §12603-1 GC. In the act of Apr. 19, 1929 (113 O. L. 283), the assured clear distance ahead provision was first enacted as an amendment to §12603 GC. It has been retained without any change in subsequent amendments to the traffic code.

Before the 1929 amendment, in **Tresise v. Ashdown, 118 Oh St 307,** decided in 1928, the Supreme Court held that an in-

struction that the operation of a motor vehicle at such a rate of speed that the driver can not stop within the distance that an obstruction in the highway could be seen by his own headlights constitutes negligence per se was erroneous. In **Skinner v. Pennsylvania R. R. Co. 127 Oh St 69, 186 N. E. 722.** decided in 1933, the court said that the assured distance provision is a specific requirement of law, a violation of which constitutes negligence per se. The Skinner case was followed by **Gumley v. Cowman, 129 Oh St 36 (1934), 194 N. E. 627; Watt v. Jefferson Trucking Co. 130 Oh St 99, 196 N. E. 887; Universal Concrete Pipe Co. v. Bassett, 130 Oh St 567, 200 N. E. 843, 119 A. L. R. 646; Hunter v. Brumby, 131 Oh St 443, 3 N. E. 2d, 353; Kormos v. Cleveland Retail Credit Men's Assoc. 131 Oh St 471, 3 N. E. (2d) 427; Higbee Co. v. Lindemann, 131 Oh St 679, 3 N. E. (2d) 426; Matz Admr v. Curtis Cartage Co. 132 Oh St 271, 7 N. E. (2d) 220; Hangan, a minor v. Hadfield, 135 Oh St 281, 20 N. E. (2d) 715; Capelle v. B & O R. R. 136 Oh St 203, 24 N. E. (2d) 822; Smiley v. Arrow Spring Bed Co. 138 Oh St 81, 33 N. E. (2d) 3, 133 A. L. R. 960.**

These decisions recognize that under some circumstances a failure to comply with the rule may be excusable. However, they make clear that the burden is upon the operator of the vehicle who attempts to escape the legal effect of this mandatory provision, to prove such a state of facts over which he had no control that compliance therewith was made impossible. **Cf., Glasco v. Mendelman, 143 Oh St 649, 653.** The plaintiff's contention that the roll of steel must have fallen suddenly in front of decedent's car must, therefore, be disregarded in the absence of some proof to support that contention.

But was the roll of steel 3 feet high and 4 feet wide such a substantially discernible object as to require a finding as a matter of law that the decedent failed to stop within his assured clear distance ahead?

The cases applying the rule as a matter of law involve collisions between a motor vehicle and a railroad train,—(**Skinner v. Penna. R. R. supra), Read v. Erie R. R. Co. 134 Oh St 31, 15 N. E. (2d) 637, Cappelle v. Baltimore & Ohio R. R. supra**); a motor truck,—(Gumley v. Cowman, supra, Watt v. Jefferson Trucking Co. supra, Universal Concrete Pipe Co. v. Bassett, supra, Higbee Co. v. Lindemann, supra, Matz v. Curtis Storage & Cartage Co. supra); whether compliance excused a jury question—(Smiley v. Arrow Spring Bed Co. supra.); a dirty automobile,—Kormos v. Credit Men's Assoc. supra); an automobile on wrong side of road, around a curve, and a jury question presented—(Hangen v. Hadfield, supra).

In Smiley v. Spring Bed Co. the court re-affirmed and restated the rule in unequivocal terms, as follows:

"To comply with the assured-clear-distance ahead provision of §12603 GC, the driver of a motor vehicle must not operate it at a greater speed than will permit him to bring it to a stop within the distance between his motor vehicle and a discernible object obstructing his path or line of travel, unless such assured clear distance ahead is, without his fault, suddenly cut down or lessened by the entrance, within such clear distance ahead and into his path or line of travel, of some obstruction which renders him unable in the exercise of ordinary care, to avoid colliding therewith."

Since the Smiley case was decided (1941) it has been recently cited with approval in **Garbe v. Halloran, 150 Oh St 476, 479 (1948) and Klever v. Reid Bros. Express Inc. 151 Oh St 467, (1949); Bickel v. American Can Co. 154 Oh St 380.**

The rule has likewise been applied in automobile-pedestrian collision cases; **Glasco v. Mendelman, 143 Oh St 649; Betras v. McKelvey Co. 148 Oh St 523;** but these cases deal primarily with the question of proximate cause and also whether the sudden entrance of a pedestrian into the defendant's path excuses compliance with the rule. It could be inferred from these cases that whether a pedestrian is a discernible object is a question for the jury.

In the Spring Bed case, the court was dealing with the situation confronting a driver proceeding over the crest of a hill in the face of lights from cars approaching from the opposite direction. But in the course of the opinion, Judge Hart discusses "discernible object" and cites authorities in other jurisdictions. He quotes, for example, from Lindquist v. Thierman, 216 Iowa, 170, 248 N. W. 504, as follows:

"To illustrate, a driver of an automobile at night, as well as in the day, in order to stop his car within the assured clear distance ahead, must be able to timely discern a **man** a **horse**, a **cow**, or **another vehicle**; whereas, such driver of the automobile might or might not discern a thin wire or a small stake in time to stop within the assured clear distance ahead."[1] (Emphasis ours.)

---

Footnote (1): Possibly because of reference in the option to Iowa cases, counsel on both sides have referred to a number of Iowa cases as well as those from other jurisdictions. Decisions in other jurisdictions subsequent to the Spring Bed case are of interest but not persuasive in the absence of any relaxation by the Ohio Supreme Court of the strict rule announced in the Spring Bed case.

As examples of the circumstances under which the rule was applied, Judge Hart refers to the following, in addition to a train of cars, a truck or automobile:

Where a motorist ran head-on into a street curb and a pole beyond it at a jog in the street on a dark, misty night (Greenland v. Des Moines, 206 Iowa. 1298, 221 N. W. 953); where a motorist ran into a concrete mixer (Elrich v. Schwaderer, 251 Mich. 33); where a motorist drove through a barrier into an opening in a road (Lauson v. Fond du Lac, Wis. 141 Wis. 57. 123 N. W. 629).

As examples where the rule was not applied, Judge Hart refers to:

Where a motorist collided with an obstacle caused by slipping on an undiscernible patch of ice in front of the obstacle (Diedericks v. Duke, 234 Mich. 136, 207 N. W. 874) and where a motorist drove into an unlighted ditch extending across the highway and not easily discernible (Owens v. Iowa County, 186 Iowa. 408, 169 N. W. 388).

In Termuhlen v. Campbell, (1943) 48 N. E. (2d) 891, the Court of Appeals of Hamilton County, held upon authority of the Spring Bed case that an oil drum resting on the berm and a few inches over the paved portion of the highway was a discernible static object and entered final judgment for the defendant. In Mossman v. Cincinnati, 34 N. E. (2d) 246, decided in 1936, the same court held a safety zone structure to be a substantial object. The platform was protected by a bumper three feet high and four feet wide, with a red glass reflector. It was otherwise unlighted.

In the Termuhlen case, the court says:

"It cannot be supposed the decedent deliberately drove into the drum. If he did, of course, his administrator, the plaintiff, can not recover. Then he either saw it or did not see it. If he saw it, he evidently saw it too late to stop the automobile, and he comes within the purview of the statutes rendering him guilty of negligence per se. If he did not see it, either he was not observing where he was driving or the lights which he was employing were not of sufficient intensity to illuminate the object far enough ahead to permit him to stop the machine when its presence became apparent. In either case, his negligence is obvious and conclusive against him He may have been and probably was led astray by the extra width of passable road caused by the Casino drive and the normal width of the highway. This accompanied by the fact that such situation gradually narrowed as the south side of

the drive terminated almost at the culvert. But this condition was wholly static. It could have been seen. It was observed by witnesses more than one hundred feet away. There was some evidence the night was misty. This only increases the burden of caution resting upon the driver of the vehicle." See also: **Schraff v. Foley Const. Co. 87 Oh Ap 277.**

In the recent case of **Brown v. Wackman (1949) 87 Oh Ap 61,** the court holds:

"A motor truck had been parked, without warning signals and lights, on the right side of a north-south highway, in such a way that part of the truck projected about ten inches over the paved portion. About 400 feet south of the parked truck there was a turn in the highway. During the night season, a motorist was operating his vehicle south on such highway at a speed of about 40 miles an hour. As he approached the parked truck, a motor vehicle travelling north on the highway negotiated the turn and as it straightened its lights blinded the driver of the south-bound vehicle, who immediately applied his brakes and materially lessened his speed. But before he came to a stop his vehicle collided with the projecting portion of the parked truck. Such driver did not see the truck until he was almost upon it. Held: In an action by the driver of the southbound vehicle, predicated on such collision, the question whether plaintiff was legally excused for failure to observe the assured-clear-distance ahead provision of §6307-21 GC, was one of fact."

In this case the court held that under the circumstances the driver was confronted with an emergency and compliance with the rule was a question of fact. The court says, however, in the opinion, that there was a question whether, under the circumstances confronting the driver, that part of the truck which projected into the highway was a discernible object. It is also said:

"Manifestly there are many degrees of visibility between freight cars standing across the full width of a road, as in **Skinner v. Penna R. R. Co. 127 Oh St 69,** 186 N. E. 722, and a wire on or above the highway. It is those objects that come between the extremes that present the factual question whether or not they are discernible."

In **Farris v. Columbus, 85 Oh Ap 385,** the same court holds that the rule has no application where the obstacle in front

is a hole in the street and is for the first time in the driver's view, after the vehicle has passed the point where the rule would be effective, and the hole is then too close to be avoided. See also: McNair v. State, 305 Mich. 181, 9 N. W. (2d) 52. The Farris case also turns largely upon the sudden emergency doctrine.

With regard to the instant case, there can be no question that had the accident occurred in daylight, the roll of steel was such a discernible object that the court could determine the question as a matter of law. The fact that the accident occurred at night does not change the size or character of the object. The driver was required to use a distribution of light, or composite beam, directed high enough and of sufficient intensity to reveal persons, vehicles and substantial objects at a safe distance in advance of his vehicle subject to the requirement and limitation that when approaching another vehicle, the driver shall use a composite beam so directed that the glaring rays are not projected into the eyes of the oncoming driver. **Sec. 6307-88 GC.** Every driver of an automobile at night soon becomes aware of the hazard of driving with the lower beam which reflects upon the highway and over the berm for a relatively short distance as compared to the distance using the upper beam. But this requirement only cuts down the assured clear distance ahead and requires the driver to slacken his speed in order to comply with the rule. **No person shall drive any motor vehicle at a greater speed than will permit him to bring it to a stop within the assured clear distance ahead.** "By force of the statute, the motorist may therefore assume nothing that is not assured to him by the range of his vision." Smiley v. Arrow Spring Bed Co. supra.

The rule is harsh and tends to defeat the ends of justice in its application to circumstances disclosed by the instant case wherein it might be contended that the negligence of the defendant was so gross as to amount to wanton misconduct[1], but until the rule is changed by the legislature this court is bound to follow the interpretation of the rule as announced by the Supreme Court.

It is therefore concluded that the roll of steel was a substantial discernible object and that plaintiff's decedent was

---

(1) From the failure of the defendant to call the driver to testify, it may be inferred that his testimony would not be favorable to the defendant, but negligence was admitted and it cannot be inferred that the driver was guilty of wanton misconduct from the mere presence of the steel roll on the highway.

guilty of negligence per se proximately contributing to his death. The judgment is therefore reversed and final judgment entered for the defendant.

Judgment reversed and final judgment for defendant. Exc. Order see journal.

CARPENTER, J, concurs, CONN PJ, dissents.

(See Dissenting Opinion by CONN, PJ.)

CONN, PJ, (Dissenting).

The admission of negligence on the part of the defendants as a proximate cause of the death of John E. McFadden, plaintiff's decedent, and the stipulation of the parties as to amount of damages in the event plaintiff is entitled to recover, eliminated all issues raised on the pleadings and the evidence, excepting that of the contributory negligence of plaintiff's decedent. This issue was submitted to the trial court, trial by jury having been waived. Under these circumstances, the trial judge was the trier both of the facts and of the law.

At the conclusion of all the evidence, defendants moved to dismiss the petition of plaintiff and enter judgment for defendants on the ground that plaintiff's decedent was guilty of contributory negligence as a matter of law which proximately caused or contributed to his death. This motion was overruled and the issues of both fact and law were determined by the trial court in plaintiff's favor and judgment entered accordingly.

The motion of defendants for judgment was essentially a demurrer to the evidence. The issue raised on this motion, under well settled rules of procedure, imposes on the trial court the duty of determining whether or not, on the whole record, there was credible evidence, together with all reasonable inferences arising therefrom, which tended to establish the issue of defendant's liability.

None of the witnesses called saw the collision. The undisputed evidence shows that the roll of steel fell on the easterly lane of the highway, where it made a sizeable dent in the road and that the distance from this point to the place where it was finally located in the easterly lane was 109 feet; that it was upgrade from the point where it fell into the highway to the place where it lay; that the roll of steel had a considerable dent on its flat side extending from the center toward the rim, the deepest part of the dent being at the center and that there were no skidmarks on the pavement.

From these facts it may be reasonably inferred that the truck from which the steel roll fell was moving southerly; that the roll of steel, after falling, was in an upright position,

did not remain static and rolled to the place where the collision occurred; that at the time of the impact, it was in an upright position with one of its flat sides facing traffic moving northerly in the easterly lane; that from the character of the dent, the demolished condition of the automobile, the noise of the crash and the car's immediate "roll into the ditch" it is inferable that the impact was one of great force and that from the absence of skidmarks it may be inferred also that the roll of steel suddenly came into the path of the approaching vehicle. A further inference arises that the testimony of defendant's driver would be unfavorable to them from the failure of defendants to call him to testify, or explain his absence.

In view of the evidence and the inferences which reasonably appear to arise, an issue of fact was presented and the trial court did not err in overruling defendant's motion for a judgment.

A more difficult question arises on the fact issue of discernibility of the roll of steel, assuming that the assured clear distance of plaintiff's decedent was not cut down or lessened by its sudden appearance into the easterly lane of the highway. There is credible evidence disclosing that the roll of steel was almost as dark as the pavement and that its color was almost identical with the pavement.

The Ohio cases cited in the majority opinion clearly establish that the operator of a motor vehicle is guilty of contributory negligence, as a matter of law, when his vehicle collides with a substantial object in the highway, unless "because of circumstances over which he had no control, compliance with the law was rendered impossible."

Impossibility of compliance may arise as a fact issue in certain instances, excluding those related to weather conditions, character of the highway or certain conduct of other users of the road, when the court can not say that the assured clear distance ahead rule applies as a matter of law. Somewhere between an object on the highway, let us say, of the size of a motor truck and an object the size of a small nail or a wire stretched across the highway, a fact issue arises as to whether or not the particular physical object is substantial and discernible. In other words, at what point in respect to size is a physical object in the highway non-discernible to the operator of a motor vehicle so as to make it impossible to comply with the statute? When reasonable minds arrive at different conclusions in this regard a question of fact arises.

It is my conclusion that the trial court did not err in over-

ruling defendants' motion for a directed verdict and that its finding and judgment is not manifestly against the weight of the evidence or contrary to law.