LOLA CARPENTER, by next friend, ROY CARPENTER, Appellee, v. CAMPBELL AUTOMOBILE COMPANY, et al., appellants.

**Negligence:** AUTOMOBILE ACCIDENT: LIABILITY OF OCCUPANT OF MA-
1  CHINE: EVIDENCE. Where the driver of an automobile is negligent in the operation of the machine and injury results, his negligence may be imputed to the owner riding with him, and jointly engaged in making an experimental trial of the machine to ascertain the cause of its failure to operate properly. Under the evidence in this case the question of the owner's liability under such circumstances was properly submitted to the jury.

**Same:** EMERGENCY AS A DEFENSE: EVIDENCE. One cannot escape lia-
2  bility for the negligent operation of an automobile on the ground that he acted in an emergency, where the emergency was created by his own negligence; or if, by the exercise of reasonable care he might have avoided injuring another, notwithstanding the emergency. Evidence held to require submission of the issue of an emergency as a defense.

**Same:** EVIDENCE: NEGLIGENCE: INSTRUCTION. The fact that de-
3  fendant was driving his car on the left side of the street when the injury to plaintiff occurred was *prima facie* evidence of negligence; but this might be overcome by showing that it was necessary to turn the car to that side rather than to the right. The instruction to that effect was not misleading and erroneous, when considered in connection with a previous instruction setting forth defendants' claim, that they were forced to the left side of the street to avoid collision with a party coming from the opposite direction.

**Same:** JOINT LIABILITY: INSTRUCTIONS. Where the court on its own
4  motion properly told the jury that two or more persons occupying the same vehicle were not jointly liable for its negligent operation, unless it appeared from the evidence that they were engaged in a common enterprise, the refusal of a requested instruction embodying the same idea was not erroneous.

**Same:** INSTRUCTIONS: APPLICATION TO FACTS. The refusal of a requested instruction not applicable to the facts, though correct in law, is not erroneous. Thus an instruction that if defendant's act in driving his automobile onto the walk on the wrong side of the street was the result of the excitement and confusion produced by the sudden and impending peril from an approaching vehicle, and but for which he would not have driven to that side of the street, the verdict should be for defendant, was properly refused because ignoring the possibility of defendant's peril having been brought about by his own negligence.

**Same:** EMERGENCY AS A DEFENSE: INSTRUCTION. The instruction in this case to the effect that, although defendant has shown such an emergency as justified him in turning his automobile to the wrong side of the street, yet he was required to have his car under such control after turning that he could avoid injuring persons on the sidewalk, stated the law correctly and was not misleading.

*Appeal from Polk District Court.*—HON. HUGH BRENNAN, Judge.

TUESDAY, MARCH 11, 1913.

ACTION to recover damages for injury sustained by plaintiff due to a collision with an automobile driven by the defendant Black, and owned by the defendant Means. Trial to a jury. Verdict and judgment for the plaintiff, and defendant Means appeals.—*Affirmed.*

*James C. Hume,* for appellant.

*John McLennan* and *Parsons & Mills,* for appellees.

GAYNOR, J.—It appears from the record in this case that the defendant George Means is an automobile dealer in the city of Des Moines; that on Friday or Saturday, April 8 or 9, 1910, he received by freight from the factory three De Tamble automobiles; that upon the arrival of said machines certain persons in the employ of Means ran said machines, under their own power, to a garage owned and occupied by the

Campbell Automobile Company and were left there in storage; that on the following Sunday, in the absence of Means, and without his consent or knowledge, the other defendant, C. L. Black, took one of these cars from the garage and drove it about the city; that the car so taken by Black was a two-passenger, two-cylinder car, the gears and brakes of which were shifted and applied entirely by foot pedals; that Means, too, was driving about the city that afternoon, in another car, and while so doing met Black with the car aforesaid, which was then standing on the north side of Grand avenue, a few yards east of Sixth avenue, headed west; that upon seeing Black he went to him, and the following occurred. as testified to by Black: ''When I saw Means approaching, I asked him to come and help me try to adjust the machinery of the car. He came over and said, 'What is the matter?' and I said: 'The thing is not working right. Get in and ride around the block with me and see what is the matter.' He got in with me. I, still driving the car, proceeded west on Grand avenue. When I got to Seventh street, I turned north on Seventh street and proceeded north on the right-hand side of the street.''

Means testified, touching this matter, as follows:

When I met him (Black), he had my machine. I got into it at his suggestion with him. He was going to show me that it was not working. I went along with him for that purpose. That was the sole purpose for going along. He suggested that I get in. He said, 'The old thing is bucking, or something, and you better go around the block.' I suppose I had a curiosity to see how the machine was working, or to know how my own property performed, and I got in the machine with him for that purpose. At the time I got in the machine, it was on Grand avenue, about one hundred feet east of Sixth avenue. The automobile was driven from there along Grand avenue to Seventh street, and then north on Seventh street. I had no particular objective point at that time. At the rate of speed we were traveling, an automobile could be stopped in a very short distance; in probably fifteen,

twenty, or twenty-five feet. There was a great deal of travel from north to south on this street. There were business houses on the east side of the street and one or two on the west side. We were driving up the street when a motorcycle came in sight. The motorcycle was almost on us before we saw it, about forty feet away. I think at that time we were just about astraddle the east rail of the east track; maybe in the center of the east track. I know that we were on the right-hand side of the street. There is distance between the curbs and the street railway tracks sufficient to accommodate traffic on both sides. We were, I should think, ten, twelve, or fifteen feet from the east curb. I never rode a motorcycle, but I think they respond quickly to the turn of the handle. They guide like a bicycle. The automobile does not respond so quickly. The street was a perfectly smooth asphalt pavement. That was one of the best traveled public highways in the city, with many vehicles going up and down, automobiles, street cars, and buggies. It is the main street leading north and is the main thoroughfare because of its pavement. The motorcycle came from the north down Seventh street. It came right around the corner on the east side of the street, on the same side we were, and going rapidly. When we first saw the motorcycle, we were moving, I should judge, not over ten or twelve miles an hour, and Black turned to the left. The motorcycle turned to the right, and we almost met just a little bit west of the center of the street. Then the motorcycle shot in behind Mr. Black very suddenly. Motorcycles can turn quickly. That is, the motorcycle turned to the east or right of us. The automobile then went on across the street to the west side over the curb, mounted the curb, and the little girl at the time was almost opposite us; maybe ten feet south of it. She turned and ran north towards her mother and grandmother with whom she was walking. From what I could see, the little girl was trying to get out of our way. She stepped into a hole and fell. As she fell, the car struck the guy post and crushed the left wheel. Some of the broken spokes in the wheel fell on the child. She was tangled up in the wheel when I picked her up. The left wheel of the automobile struck the curbing first and ran on the sidewalk before the right wheel did. So we got on the sidewalk obliquely. After the car mounted the sidewalk, I cannot say as to whether it kept on straight or was steered one way or the other. It looked as if it went in a straight line. When I saw

the motorman coming toward us, Black reached for the levers, and there were none there, and he just turned to the left and went upon the curbing. I think he reached for the levers about a second before he struck the curb. I do not think he reached for the levers until he saw he was going to hit the curb. An automobile going at ten or twelve miles an hour can be stopped in fifteen or twenty feet if you apply the brakes and they are working properly. Going slower you can stop it in a shorter distance. If it is going faster, it takes longer. I knew little about Black's experience in driving cars. I had ridden with him once or twice before. I had never seen him act in an emergency before.

Means further testified that, upon an examination of the machine after the accident, he found the wheel crushed in, frame hanger in front broken, the spring buckled up, the front lamp broken, steering rod bent underneath, caused by the impact with the guy post. He further testified that the car was controlled entirely with the feet. "It had two foot pedals. The left foot pedal was the reverse which could be use as a brake. The right was the high-speed pedal, and in order to apply the brake you had to kick it out with your heel and go forward on the right pedal to the brake. I do not think Mr. Black applied this brake at all."

Mrs. Morrison, the aunt of the little girl, and Mrs. Carpenter, the grandmother of the plaintiff, both of whom were with the little girl at the time of her injury, testified as to the rate of speed at which the automobile was going. Mrs. Morrison testified that at the time of the accident the automobile was going at the rate of thirty or thirty-five miles an hour. She said: "According to my observation, it was greater than the ordinary rate. Though I have never tested the rate of a car, I have ridden in them when going thirty or thirty-five miles an hour, and I have ridden in them when they were going eight or ten miles an hour, and I know the difference. I was pretty badly frightened. At the time I first saw the automobile it was twenty-five feet and possibly further than that from me. It was coming towards us at an angle. The

post that the car struck was west of the sidewalk upon which the car ran. I should judge it was twenty-five feet from where the automobile stopped to the point where it mounted the sidewalk." Mrs. Carpenter did not attempt to estimate the speed of the car, but said that it was mounting the sidewalk when she first saw it, and that it was going very fast.

The acts of negligence complained of are:

(1) That the said defendants were, at the time of the accident hereinbefore set forth, running and operating said automobile at a rate of speed greatly in excess of that permitted by the city ordinance of the city of Des Moines, for the location where the said car was operated, and in violation of the state law in regard to the speed of automobiles and motor vehicles. (2) That the said defendants operated the car negligently, and willfully drove the car upon and across the curbstone and sidewalk on said West Seventh street, and struck this plaintiff while on said sidewalk. (3) That the defendants negligently drove the said automobile upon and across the sidewalk on the west side of said West Seventh street, and struck the plaintiff while plaintiff was on said sidewalk. (4) That the said defendants, while operating the said automobile, negligently failed to take care to avoid injuring the plaintiff, who was lawfully on the sidewalk along said street.

The defendant Means, answering these charges of negligence, after denying any negligence on his part or on the part of Black, and denying that they were running at an unlawful or improper rate of speed, admits that the automobile was owned by him, but denies that it was being operated by him or by one of his agents or employees, and further alleges that the running of said automobile on West Seventh street at the time and place referred to and the injury to the plaintiff then and there occurring was the unsuspected and unforeseen result of an attempt on the part of Black to avoid a collision with a man approaching the automobile from the north upon a motorcycle at a high and dangerous rate of speed, and upon the

wrong—that is, the east—side of the street. Upon the issues thus tendered, the case was tried to a jury and a verdict rendered for the plaintiff against both defendants. The defendant Means alone appeals and alleges. (1) That the court erred in overruling the motion of appellant for a verdict, because the evidence failed to show that, at the time of the alleged accident to the plaintiff, C. L. Black, the person operating and in charge of the automobile which caused the injury, was the servant or agent, or acted within the scope of his employment, or engaged in the business, of this defendant. (2) That the evidence affirmatively shows that at the time of the accident the ·defendant C. L. Black was using and operating the machine in his own business and for his own purposes. (3) The evidence fails to show that this defendant participated in any way in the act or acts of negligence complained of. (4) Because the evidence shows that the injury complained of was the result of the action of the defendant C. L. Black, done in an emergency, induced by fright or confusion resulting from impending danger.

So it becomes material to inquire into and determine whether or not, under the record made in this cause, the court erred in overruling these motions. In support of the first, second, and third grounds of the motion, as hereinbefore set out, the defendant invokes the rule, and insists on its application to the facts in this case, that where an injury has been done through the wrongful or negligent act of another, to which the party charged has in no way contributed, he should not be held responsible for the negligence or wrongful act of the other, and in support of this contention relies upon the doctrine laid down in numerous decisions, and of almost universal application, that, where the owner and driver of a team and carriage invites another to ride in his carriage, no relationship of principal and agent is created. No relationship of master and servant is established. The owner and driver of the team is not controlled by, and is not in

1. NEGLIGENCE: automobile accident: liability of occupant of machine: evidence.

any sense, the agent of the invited guest, and to hold him liable for the negligence of the former, by whose permission alone he rides, is unauthorized by law and repugnant to reason, and further claims that where the machine was not being used, at the time, in the owner's business, the owner of the automobile is not liable for an injury caused by the negligent driving of the borrower, and cites in support of these propositions, *Union Pacific Ry. Co. v. Lapsley,* 51 Fed. 177 (2 C. C. A. 149, 16 L. R. A. 800) ; *Reynolds v. Buck,* 127 Iowa 601. *Reynolds v. Buck, supra,* is clearly distinguishable from this case. There the automobile was being operated by his son without the knowledge or consent of the defendant, the father, and not at the time in his employ or about his business.

He also cites *Hartley v. Miller,* a Michigan case, found in 165 Mich., 115, (130 N. W. 336, 33 L. R. A. [N. S.] 81). In this case it appears that defendant Miller was the owner of the automobile; that on the night preceding the day of the accident Lootens borrowed the same from the defendant Miller; that on the day of the accident Lootens called on Miller for the automobile; that, on the invitation of Lootens, Miller rode with Lootens, in the machine, to Lootens' home; that, upon reaching Lootens' home, he and his company insisted upon Miller's accompanying them on a ride, and Miller acceded to their invitation and went with them. It was contended in' that case that because Miller was present and the machine was being used with his consent, at the time of the injury, he is liable; that the automobile is a dangerous machine, and its owner should be held responsible for the manner in which it is used. Miller claimed, and the court says it is indisputable in the record, that the automobile had passed into the possession and control of the defendant Lootens for the day, and that Miller did not have the right or authority to dictate or direct the manner in which the automobile should be operated; that it was as much in the control of Lootens for that day as it would have been had he been the absolute

owner thereof, and that Miller was not liable, and the court says, ''It has been held that the owner of a motor vehicle is not liable for an injury caused by the negligent driving of the borrower, if it was not used at the time in the owner's business.''

Upon these authorities defendant claims that Black was driving and in control of the automobile; that Means was simply his passenger and invited guest, taking no part in the operation of the car and having at the time no control over it. Though the owner of the car, it was not being used in Means' business. Though interested in knowing how it performed, he was not testing it. The tryout was being made by Black for himself and for his own purposes and not for Means. Though the owner of the car, Means was not engaged in a common enterprise with Black any more than was the owner of the car in the Michigan case above cited, nor any more than is any gratuitous passenger engaged in a common enterprise with the man who is in control of it. Does the record in this case bear out this contention? Does it show that the car was not being used in Means' business; that Means was simply an invited guest, taking no part in the operation of the car and having no control over it? Was the tryout being made by Black for himself and for his own purposes and not for Means? Were Means and Black engaged in a common enterprise? Let us see.

Means was the owner of the car. It had been owned by him only a few days. He had never tried the car. It was his property, and he was interested in knowing whether it worked properly or not, whether there was anything wrong with it. He met Black on the street trying to adjust the machinery of the car. Black told him it was not working right; that he would show him it was not working right, and suggested that he get in the car. He went along with Black for the purpose of ascertaining what, if any, defect there was in the car; to see how it worked; to see how it performed. What interest had Black in knowing whether the machine

worked right or wrong? Means had given him no right to the possession of the machine, and no right to use it, or try it, prior to the meeting on the street on Grand avenue. As soon as he saw Black on the street, he went to him and asked, "What is the mátter with the machine?" and with his consent then, for the first time, Black ran the machine for the sole purpose of enabling Means to know how the machine was working and how his own property performed.. Means was the one interested in the experimental trial. He consented to Black's making the experimental trial. Black was therefore .in and about Means' business, or, at least, they were engaged in a common enterprise in ascertaining what was the cause of the trouble with the car.

In *Larken v. B. C. R. & N. Ry. Co.,* 85 Iowa, 498, it appears that plaintiff hired a conveyance at the livery barn to take her to her sister's home, that she was furnished a driver, that she was injured through the negligence of the driver, and the Supreme Court in that case approved an instruction to the effect that, if the driver was guilty of negligence which contributed to the injury, such negligence will not prevent recovery by the plaintiff, only in case the driver was under the control and direction of the plaintiff, or in case the plaintiff had a right to control and direct him. The converse of this proposition is that, if the driver is guilty of negligence and injury results, his negligence may be imputed to the party riding with him, in case the driver was under the control and direction of the party charged, or in case the party charged had a right to control and direct the driver. This proposition is also supported by *Knightstown v. Musgrove,* 116 Ind., 121 (18 N. E. 452, 9 Am. St. Rep. 827) ; *State v. Boston,* 80 Me. 430 (15 Atl. 36). See, also, 3 Ann. Cas. 703; *Koplitz v. City of St. Paul,* 86 Minn. 373 (90 N. W. 794, 58 L. R. A. 74), and cases cited.

In every case in which it is held that the negligence of the driver cannot be imputed to the party riding with him, an exception is always made to the effect that where they are

engaged in a common enterprise, or where the driver is in an enterprise of any kind for the use and benefit of the party charged, in his employ, or under his control, or where the instrumentality used is under the control and direction and owned by the party charged, and where he has a right to control and direct it, whether he exercises that right or not, he is held for the negligence of the driver. The question here was clearly for the jury and not for the court under the record made in this cause, and the court rightly overruled defendant's motion for an instructed verdict.

The next contention on the part of defendant is that the jury should have been instructed to return a verdict for the defendant at the conclusion of all the testimony for the reason that the evidence shows without contradiction that the action of Black in driving the automobile upon the sidewalk was the result of fright and excitement induced by impending peril. This question was clearly for the jury, and the motion, so far as based upon this ground, was properly overruled, for the reason that it was for the jury to say whether the injury complained of could have been avoided, notwithstanding such emergency, by the exercise of reasonable care, and to say whether or not the defendant Black, notwithstanding the emergency, could by the exercise of reasonable care on his part have prevented the injury. One cannot shield himself behind an emergency created by his own negligence. Where one, by his own act of negligence, puts another in peril, and to escape the consequences of his act of negligence he does something that imperils and perhaps injures others, how can he escape the consequences of this act?

2. SAME: emergency as a defense: evidence.

The defendant's testimony is that he was on the right side of the street; that he saw a motorcycle coming towards him from the north; that he turned to the left to avoid collision with the motorcycle. He was at the time near the center of the street, at least fifteen or twenty feet from the east curb. He could easily have turned to the right. There was no

apparent obstacle to his so doing. Apparently the emergency did not arise until after he turned to the left. At least, the jury might have well so found. It was his duty to keep to the right. The jury might well have found that the emergency was due to and created by the negligent act of Black in turning his automobile to the left. The jury might, too, have found that if Black had his automobile under perfect control, as he should have had, on a public street, such as the one in question here, he might have stopped the same after the emergency had passed and have prevented the injury. The testimony is that the automobile, running at the rate of speed authorized, might have been stopped within fifteen or twenty feet. The record does not disclose any effort on the part of Black to stop the machine even after the emergency passed. Means says he does not think he used the brakes at all, and the machine was not stopped until it was stopped by the guy post; then only after passing over from the east side of the street to the west, up over the sidewalk, and across the same. This is so clearly a question for the jury that it needs no argument.

The defendant further contends that the court erred in giving to the jury that part of instruction four wherein the court said that the turning of the automobile to the left-hand side of the street is *prima facie* evidence of negligence. The part of the instruction complained of, when paraphrased, reads as follows: That if the jury find that the defendant in operating the automobile turned to the left upon meeting another vehicle going in the opposite direction, and that by reason of such turning the accident happened, this would be *prima facie* evidence of negligence and would raise a presumption that defendants were negligent in turning their machine to the left and onto the sidewalk where the plaintiff was traveling, but that the conduct of the defendant, in turning to the left instead of the right, might be explained by the defendants so as to show that they were justified in turning the automobile to the left instead of to the right. This instruction must be read in

3. SAME: evidence: negligence: instruction.

the light of the record and of the claims made by the parties. The court had already said to the jury that the defendants claimed that their conduct, in running the automobile upon the sidewalk on Seventh street at the point charged and the injury to the plaintiff resulting therefrom, was due, as the unexpected and unforeseen result of an effort on the part of defendant Black to avoid a collision with an approaching motorcycle from the north, which was running at a high and dangerous rate of speed and running upon the same side of the street on which defendants were rightfully proceeding. It must be assumed that the jury were intelligent enough to understand and appreciate that the explanation that would justify the defendants in turning to the left, referred to in the instruction, had relationship to the claim made by the defendants in their answer upon which they sought to justify their conduct, and no other. And the jury, when they came to determine whether the defendants had explained their conduct so as to justify their turning to the left instead of the right, would understand that they were directed to consider the claim upon which defendants sought to justify their conduct and the evidence offered in support of the same. In support of this instruction, see section 1569 of the Code and *Riepe v. Elting,* 89 Iowa, 90, in which the court said: ''The general rule seems to be that, where a collision occurs between a vehicle or horse of the person on the wrong side of the road and that of a person coming towards him, the presumption is that it was caused by the negligence of the person who was on the wrong side of the road; but his presence on that side may be explained or justified. The fact that the party was on the left of the center of the road when the accident occurred was *prima facie* evidence of negligence.'' We see no error in the giving of instruction four complained of, and no error in refusing instruction six asked by the defendant.

Defendant further complains that the court erred in giving instruction nine on its own motion and in refusing

to give instruction nine asked by appellant.   We see no error

**4. SAME: joint liability: instructions.**

in the giving of instruction nine by the court on its own motion, nor in the refusal to give instruction nine asked by the defendant.   In instruction nine asked by the defendant, the court was requested to tell the jury that, if the defendants Black and Means were engaged in a joint enterprise or common purpose, they were both liable, but if they were not so engaged, and that Means was accompanying Black simply as a guest, then Means was not responsible for the conduct of Black. The court in its ninth instruction told the jury that two or more persons, occupying the same vehicle, were not jointly liable for negligence, unless it appeared from the evidence that they were engaged in a common enterprise.

The defendant next urges that the court erred in refusing to give instructions ten and eleven, asked by the defendant.   It is well settled in this state that the refusal of the

**5. SAME: instructions: application to facts.**

court to give an instruction correct in law, correct as an abstract proposition, but not applicable to the evidence, is not error. These instructions nine and ten, asked by the defendant, to the effect that if the act complained of by the plaintiff was the result of the excitement and confusion produced in the defendant by sudden and impending peril from an approaching motorcycle and its rider, and that but for this excitement and confusion they would not have driven upon the sidewalk, then the verdict of the jury must be for the defendants.   These instructions ignore too many questions appearing in this record to justify the court in giving them to the jury as a guide.   They ignore the thought that, if the excitement and confusion and the sudden and impending peril were produced by their own negligence, it would not serve as a shelter behind which they could hide against the consequences of their act, and the jury might well be led by these instructions into the belief that no matter how the peril or impending danger arose, no matter how negligent the

defendants were in producing such conditions, yet, if they existed and they acted under them, they would be relieved from responsibility. These instructions though abstractly correct, were liable to mislead the jury as to the rule that should guide them in this case, and were rightly refused.

Complaint is made of instruction six given by the court on its own motion. This instruction was given, and evidently intended, as a guide to the jury, when they came to

**6. Same: emergency as a defense: instruction.** consider and determine whether on the ground of an emergency existing at the time, producing confusion and excitement, the defendants had explained and justified their conduct in turning to the left and passing across the street to the west and upon and across the sidewalk, on which the plaintiff was traveling. The court said to the jury, in substance, in this instruction: "If you find from the evidence the defendants did not exercise ordinary skill and care in managing the machine, or that the person driving the machine was at the time unable to control it on account of his lack of knowledge or experience, even though you find there were defects in the same by reason of which he was unable to manage the car, nevertheless the driver would not be justified in turning it to the left and upon the sidewalk, where persons were traveling, unless you were satisfied there was a cause or an emergency requiring him to do so, in order to avoid injury. But even then, if you further find they did not have control of the car so that, by reasonable effort and care, they could have prevented the same from running upon the sidewalk where people were passing and repassing, or if you find that by the exercise of reasonable care and diligence and a proper knowledge of the operation of the car they could have stopped the same by the use of the appliances on the car, placed there for that purpose, and they failed to do this, the existence of the alleged emergency will not shield them from the liability for resulting consequences." That is, the court said, "If you find from the evidence that the per-

son operating' this car has explained to your satisfaction that such an emergency existed as to justify him in turning to the left, to allow a certain motorcycle to pass him, nevertheless such person operating the machine must have it under control, after so turning to the left, that he may be able to avoid injury to others." This instruction, though not happily worded, we think was not misleading or prejudical, and, when properly analyzed and understood, correctly states the law as applicable to this branch of the case, and, though not worded with the technical niceness that appears in the instruction asked by defendant upon this point, yet we think it more correctly states the rule which should be observed by the jury on this branch of the case, and we find no reversible error in the giving of the same.

There are other matters complained of by the defendant, but we think them sufficiently disposed of in what has been said on other branches of the case.

We think the verdict right, and the case should be *Affirmed.*