Wayne SINKEY, as the Father and next
friend of Joy Lorraine Sinkey, a
minor, Appellant,

v.

SURGICAL ASSOCIATES, William R.
Meyer and Jane Lamb Memorial
Hospital, Appellees.

No. 54363.

Supreme Court of Iowa.

May 5, 1971.

Simon W. Rasche, Jr., Clinton, for appellant.

Lane & Waterman, Davenport, for Jane Lamb Memorial Hospital, appellee.

Betty, Neuman, McMahon, Hellstrom & Bittner, Davenport, and Shaff & Farwell, Clinton, for Surgical Associates and William Meyer, appellees.

STUART, Justice.

This is a malpractice action brought against the doctor, the partnership with which he was associated and the hospital where the questioned services were performed. The trial court directed a verdict for defendants at close of plaintiff's case. We affirm.

In considering the propriety of a motion for directed verdict, we view the evidence in the light most favorable to the party against whom the motion was made. Rule of Civil Procedure, 344(f) (2), 58 I.C.A.

On September 1, 1966 Joy Sinkey, five years old, displayed symptoms of the flu and was vomiting. The next day the vomiting continued, the stomachache became more acute with pain in the lower right side of her abdomen and the child developed a temperature of 101 degrees.

Late in the afternoon Mrs. Sinkey called Dr. Meyer, who had not treated any member of the family previously, and told him her daughter had appendicitis and narrated the symptoms. He told her to bring the child to the hospital where he conducted a physical examination and examined the laboratory report and x-rays. At the conclusion of the examination which covered about two hours, he diagnosed the illness as tonsillitis, gave the parents some medicine for the child and sent her home.

The second day after the examination the child improved, then steadily grew worse. On September 7, Mrs. Sinkey called the doctor and said they were down to the last dose of medicine and Joy was still complaining about pain in her stomach. Dr. Meyer told Mrs. Sinkey to bring the child to the hospital. They arrived between 5:00 and 5:30 p. m. A blood test and x-rays were taken and a surgical release signed. That same evening surgery was performed disclosing a ruptured appendix and peritonitis. The appendix was not removed, but tubes were inserted to drain the infection. In November a second operation was performed to remove the appendix.

Mrs. Sinkey took Joy back to Dr. Meyer about a month after this second surgery for treatment when Joy had a reaction to penicillin and complications with regard to a bowel obstruction.

Plaintiff called Dr. Sorenson as a witness. He had "volunteered his help" and examined Joy for about 10 minutes during the two hours Dr. Meyer had her in the hospital on September 2. He testified he palpated her abdomen, listened to her lungs and looked into her ears and throat. He did not see the x-rays or laboratory report, but was informed the white blood count was 5000.

On cross-examination, he testified that after examining Joy's stomach he felt there was not enough there to make a diagnosis of appendicitis so he started checking her chest and ears. Although he did not get a good look at her tonsils, the back part of the roof of her mouth looked red. He felt that Dr. Meyer had had a better look since he had his own light. Dr. Sorenson further testified that he frequently sees children with tonsillitis who do not experience pain in that area of the throat.

With acute appendicitis the white blood count usually rises "quite remarkably". Normally, with a child of Joy's age the blood count will be from six to ten thousand and with acute appendicitis it can be

expected to rise to twelve thousand five hundred to eighteen thousand. Dr. Sorenson testified, however, that Joy's count was even lower than the usual and that this is "ordinarily constant with a viral infection such as tonsillitis". He agreed with Dr. Meyer that her stomach symptoms were probably caused by tonsillitis.

Dr. Schmunk, the radiologist who took the x-rays, was called as a witness for plaintiff. On September 3, the day after the examination, he wrote a report to Dr. Meyer on the x-rays of Joy Sinkey in which it was stated his "impression" was "localized reflex ileus [stoppage of the bowel] secondary to appendicitis". His impression was formed on a statistical basis as appendicitis headed the list of possibilities.

On cross-examination he testified: "The difference between an 'impression' and a diagnosis is that an impression means something that I think it could be by looking at the shadows on films. A diagnosis, to me, means that this is it; all things fit together; this is the final answer. There are many other conditions besides appendicitis which could be consistent with my finding on the x-ray of reflex ileus. Some of these are pneumonia, gastroenteritis, which is an infection of the stomach and the bowel. The next most common would be mesenteric adenitis, which is swelling of the glands with throat infections or colds. These are the most common in childhood." Tonsillitis is one of the diseases included in the term mesenteric adenitis. Other causes could have been ulcerative colitis, regional enteritis and tuberculosis.

Dr. Schmunk also pointed out that any good doctor would realize that the existence of reflex ileus indicates all these possibilities. Consequently, he did not feel it necessary to spell out all the possibilities since a "shorthand" reference would alert the doctor. The more highly he regarded the attending physician, the less detailed he made his report. He also testified that the clinical examination was more important than x-ray findings in diagnosing appendicitis. "It is possible to have appendicitis without any x-ray findings at all and it is also possible to have a reflex ileus without appendicitis."

■ I. It is well established that malpractice may consist in lack of skill or care in diagnosis as well as in treatment. Dickinson v. Mailliard (Iowa, 1970), 175 N.W. 2d 588, 590, and citations; Wilson v. Corbin (1950), 241 Iowa 593, 599, 41 N.W.2d 702, 705.

Nevertheless, a physician or surgeon does not insure the correctness of his diagnosis. A patient is entitled to a thorough and careful examination such as his condition and attending circumstances will permit, with such diligence and methods of diagnosis as are usually approved and practiced by physicians of ordinary skill and learning under like circumstances and in like localities. Grosjean v. Spencer (1966), 258 Iowa 685, 691, 140 N.W.2d 139, 143; Barnes v. Bovenmyer (1963), 255 Iowa 220, 228, 122 N.W.2d 312, 316; Wheatley v. Heideman (1960), 251 Iowa 695, 704, 102 N.W.2d 343, 349; Wilson v. Corbin, supra.

■ Evidence of the requisite skill and care exercised by a physician must be given by experts, unless the physician's lack of care is so obvious as to be within the comprehension of the layman's common knowledge or experience or the physician injures a part of the body not under treatment. Grosjean v. Spencer, supra, 258 Iowa at 692, 140 N.W.2d at 143–144.

II. Plaintiff claims Dr. Schmunk's impressions of the September 2 x-rays supplied the expert testimony necessary to make a jury question as to Dr. Meyer's specific act in failing "to properly interpret and communicate to the plaintiff that plaintiff's x-rays of September 2, 1966 were subject to an interpretation of appendicitis".

The assignment involves two separate charges of negligence, (1) failing to prop-

erly interpret the x-rays and (2) in failing to communicate a correct interpretation to the patient's parents.

■ There is no evidence Dr. Meyer failed to properly interpret the x-rays. They showed a reflex ileus which is consistent with both appendicitis and tonsillitis. His diagnosis of tonsillitis rather than appendicitis was based on the finding in his physical examination and blood tests as well as the x-rays. The diagnosis does not indicate he misread the x-rays.

■ The second allegation of negligence is based on an asserted duty to advise the patient that the x-ray finding was consistent with appendicitis and that the radiologist's impression was appendicitis. We know of no case which has held a doctor must inform the patient of possible diseases disclosed by one element of the examination. Plaintiff's citations do not so hold. Such an obligation would be highly impractical and in many instances poor psychology. These are considerations which must enter into the doctor's diagnosis, but the various possibilities could have no particular meaning to the layman, would serve no useful purpose and could cause unnecessary confusion and worry.

In Grosjean v. Spencer, supra, 258 Iowa at 694, 140 N.W.2d at 144, we quote with approval from Williams v. Menehan (1963), 191 Kan. 6, 8, 379 P.2d 292, 294, which states: "To make a complete disclosure of all facts, diagnoses and alternatives or possibilities which might occur to the doctor could so alarm the patient that it would, in fact, constitute bad medical practice."

We find no evidence to support the allegation of an incorrect interpretation of the x-ray and hold that under these circumstances the doctor had no duty to advise the patient of the fact that the condition shown in the x-ray was also consistent with appendicitis.

■ III. Plaintiff claims the hospital was negligent in failing to inform plaintiff that Dr. Schmunk's impression of the September 2, 1966 x-rays was "reflex ileus secondary to appendicitis".

Plaintiff cites no authorities for this proposition and makes no argument except to refer to his argument in division II relative to Dr. Meyer's negligence. The argument made there does not seem to be entirely appropriate to a hospital's duties. We have found no cases which require a hospital to inform a patient of the radiologist's impressions. The propriety of doing so is questionable. Both the doctor and radiologist are independent contractors, not employees of the hospital. The radiologist has no contact with the patient but is consultant to the attending physician. His reports are made to the doctor who is responsible to the patient.

We find no merit in this assignment of error.

■ IV. Plaintiff claims even if the expert testimony is not sufficient, the physician's lack of care in diagnosis was so obvious in this instance that it was within the comprehension of the layman and expert testimony was not necessary. Grosjean v. Spencer, supra, 258 Iowa at 692, 140 N.W.2d at 143–144, and citations.

We cannot agree with appellant's contention that this is an appropriate case to apply this exception to the general rule requiring proof by expert testimony. The cases where we have indicated the exception might apply have all been cases where something drastic was wrong with the diagnosis or the treatment. Wheatley v. Heideman (1960), 251 Iowa 695, 102 N.W. 2d 343 (defendant failed to detect injury to plaintiff's eye visible to the naked eye); Daiker v. Martin (1958), 250 Iowa 75, 91 N.W.2d 747 (tight cast shut off circulation of blood to foot resulting in amputation); Frost v. Des Moines Still College of Osteopathy and Surgery (1956), 248 Iowa 294, 79 N.W.2d 306 (burns sustained on stomach while anesthetized for back surgery); Bartholomew v. Butts (1942), 232

662

Iowa 776, 5 N.W.2d 7 (circulatory obstruction from acute flexion of elbow causing Volkmann's contracture); Evans v. Roberts (1915), 172 Iowa 653, 154 N.W. 923 (doctor cut off portion of patient's tongue while operating for adenoids).

Our review of the record in this case convinces us of the soundness of the rule generally requiring expert testimony. The expert testimony here did not establish a negligent diagnosis but did disclose the validity of the expert testimony requirement in this instance.

The symptoms of appendicitis are so well known and recognized by laymen that the illness on the surface appeared to be appendicitis. But the experts pointed out that the symptoms and x-rays findings are consistent with other diseases including tonsillitis. The high white blood cell count generally associated with appendicitis was not present. Dr. Sorenson's conclusions, without the x-ray, agreed with Dr. Meyer's diagnosis. No findings of the examination have been shown to be inconsistent with tonsillitis, but a low white cell blood count is not consistent with appendicitis.

The layman would have no conception of the complex nature of the problem. In this case the obvious was correct and the doctor's diagnosis was wrong. But, recovery is not permitted merely because a doctor makes a wrong diagnosis. If the examination was thorough and competent, and no negligence is shown, the patient cannot recover. The record here discloses an honest mistake in the doctor's judgment, but does not show he was negligent in arriving at his opinion.

The trial court is affirmed.

Affirmed.

MOORE, C. J., and MASON, RAWLINGS, LeGRAND, REES and UHLENHOPP, JJ., concur.

BECKER, J., dissents.

REYNOLDSON, J., takes no part.