Lena FREESE, Appellant,

v.

Norman F. LEMMON, Kay Ellann Lemmon and Merwin R. Dieckmann, Appellees.

Jo Ann FREESE, Administrator of the Estate of John R. Freese, Deceased, Appellant,

v.

Norman F. LEMMON, Kay Ellann Lemmon and Merwin R. Dieckmann, Appellees.

No. 2–58567.

Supreme Court of Iowa.

June 28, 1978.

Lundy, Butler, Wilson & Hall, by John L. Butler and R. Kurt Swaim, Eldora, for appellants.

Swisher & Cohrt, Waterloo, for appellees Lemmon.

Wadsworth, Elderkin, Pirnie & Von Lackum, by D. A. Elderkin, Cedar Rapids, for appellee Dieckmann.

UHLENHOPP, Justice.

This appeal involves a quite complicated submission to a jury of combined automobile negligence and medical malpractice cases, which were pleaded and tried together under our liberal rules on joinder of actions, parties, and trials, rules 22–24, 185, Rules of Civil Procedure. We previously ruled on one aspect of the litigation. *Freese v. Lemmon*, 210 N.W.2d 576 (Iowa).

In 1969 Norman F. Lemmon (Lemmon) was 33 years of age and a resident of Cedar Falls, Iowa. For several years he had suffered severe headaches as well as dizziness and light-headedness. He had no history of epilepsy nor, apparently, did his parents or siblings. His physician was Merwin R. Dieckmann, a medical doctor engaged in family practice. Dr. Dieckmann prescribed a medicine for Lemmon called Periactin.

On the evening of July 27, 1969, while he was reading to his son at home, Lemmon was suddenly struck with a seizure which rendered him unconscious. He was taken to a hospital where Dr. Dieckmann examined him. Various tests were made with negative results.

Dr. Dieckmann thereupon called in Robert H. Kyle, a medical doctor specializing in neurosurgery. Dr. Kyle examined and tested Lemmon. He testified:

The examination was completely normal. This was a 33-year-old right-handed intelligent engineer and we could find nothing wrong with him. Carried out a brain wave or electroencephalogram and it proved to be normal.

Q. Then to what did you attribute this seizure? A. We didn't. We didn't know what caused it.

Q. What was your diagnosis based on the history? A. Single grand mal seizure, cause undetermined.

Q. What is a grand mal seizure? A. Well, it's a sizable electrical storm in the brain. It doesn't specify its cause or anything.

Lemmon appeared to recover, and Dr. Dieckmann discharged him. The testimony of witnesses is not consistent as to what advice Dr. Dieckmann gave him. Depending on which witness the jury believed, it could find Dr. Dieckmann did not advise him on the subject of driving a car or it could find Dr. Dieckmann told him he could pursue his regular activities including car driving. Dr. Dieckmann did take him off of Periactin, as a possible source of the trouble. Lemmon returned to his job and indeed re-roofed his home.

On September 21, 1969, plaintiff Lena Freese (plaintiff) was standing off of the paved portion of Rainbow Drive in Waterloo, Iowa. Lemmon and his wife owned a car and Lemmon was operating it on the

Drive with his wife's consent. He suddenly lost consciousness. The car angled off to the side, struck plaintiff, pinned her against a parked car, and inflicted serious injuries upon her.

Lemmon was taken to a hospital. After regaining consciousness he was confused and had some head pain and weakness of his left arm and leg. The next day he seemed no better and Dr. Dieckmann decided to send him to Mayo Clinic in Rochester, Minnesota. At the clinic Ross Miller, a medical doctor specializing in neurology, and other physicians, examined him. Dr. Miller testified in depositions which were proffered but not admitted in evidence:

And, with the history of sudden loss of consciousness and the weakness of the left arm and leg, advised a right carotid angiogram which is a test where the dye is placed in the right carotid artery of the neck and X-rays are taken of the contrast media as it goes through the arteries of the brain. This was done on September 24th and showed a large mass in the right temporal lobe. He was taken to surgery where a right temporal craniotomy was carried out and the skull was opened and we encountered a large blood clot within the brain filling the temporal lobe of the brain. The hemmorrhage was removed. We found no evidence of tumor in the cavity where the hemmorrhage lay. We found no evidence of an abnormal collection of blood vessels nor aneurysm or blister of the blood vessel. And, his postoperative course, he appeared to be less confused. He continued to have weakness in the left arm and leg. On the 26th of September he was alert and answered questions and the weakness had improved.

Also:

From our gross examination of the blood clot this appears to be an acute blood clot that occurred at the time of this seizure when he was driving his car, and we found no evidence of a blood clot being present previously. Now a small blood clot could have still been there and not caused any problem.

Dr. Miller released Lemmon with instructions not to work for three weeks and not to drive. While Dr. Miller testified in generalities about not permitting a patient to drive after a seizure, he was unwilling to state that Lemmon should have been so advised after the first incident of unconsciousness since he did not see Lemmon at that time.

Sometime later Lemmon had two other incidents of unconsciousness—perhaps from scar tissue from the surgery—but after a subsequent free period he was eventually advised he could drive again.

In due course plaintiff brought an action for damages against Lemmon and his wife (as co-owner of the car) as well as Dr. Dieckmann. Plaintiff's husband commenced a similar action for loss of consortium. Subsequently plaintiff's husband died and his administrator was substituted. The trial court consolidated the actions and tried them with a jury. At the conclusion of the evidence the court directed a verdict for Dr. Dieckmann and submitted to the jury the claims against Lemmons. The jury found for Lemmons. Plaintiffs appealed and all defendants cross-appealed.

We transferred the appeals to the Court of Appeals, which affirmed in part, reversed in part, and remanded. All parties then applied to us for further review, and we granted the applications.

The parties argue numerous issues but we find the following to be determinative: did the trial court err (1) in its instructions submitting the issue of negligence against Lemmons, and (2) in directing a verdict for Dr. Dieckmann?

I. *Instructions Under Claims Against Lemmons.* In their petitions, plaintiffs alleged Lemmon was negligent (a) in five respects regarding rules of the road, some predicated on statute and some on common law, and (b) in driving when he should have known this was dangerous. The trial court held that plaintiff established violation of the rules of the road under (a) as a matter of law, as well as proximate cause, but that Lemmon's unconsciousness excused the vio-

lations as a matter of law. The ruling relating to excuse appears to be based, as to the statutory specifications in (a), on the legal excuse doctrine in *Kisling v. Thierman,* 214 Iowa 911, 243 N.W. 552, and as to the common law specifications in (a), on legal excuse under the emergency doctrine. *Bletzer v. Wilson,* 224 Iowa 884, 276 N.W. 836. The court further held, however, that plaintiffs developed a jury issue under the specification in (b)—driving when Lemmon should have known this was dangerous.

Hence the court did not submit the specifications under (a). It submitted the specification in (b) and placed the burden of proof on plaintiffs, in these instructions:

No. 9. Iowa law provides that any person must exercise due care in connection with the operation of a motor vehicle.

Under certain circumstances a person's health or physical condition may be such that in the exercise of due care he should not operate a motor vehicle at all.

If a person knows or should know of conditions or circumstances involving his health or physical condition which would render it potentially hazardous for him to operate a motor vehicle then such person would be guilty of negligence, if he undertook the operation of a motor vehicle.

Plaintiffs claim that defendant Norman F. Lemmon was negligent in this respect.

No. 10. In order for plaintiffs to recover on their claims *they must establish by a preponderance of the evidence* each of the following propositions:

1. That the defendant Norman F. Lemmon was guilty of negligence with respect to the rule of law submitted to you in Instruction No. 9.

2. That such negligence was the proximate cause of the mishap in question and damages sustained by the plaintiffs.

*If plaintiffs have established each of these propositions by a preponderance of the evidence* your verdict will be for the plaintiffs and you will consider the matter of damages.

*If the plaintiffs have failed to establish either or both of these propositions by a preponderance of the evidence* then your verdict will be for the defendants. (Italics added.)

■■■ A. Plaintiffs object that while the trial court rightly held the charges of negligence under (a) to be established, together with proximate cause, it should then have placed the burden of proving legal excuse for such violations on Lemmons and submitted that issue to the jury. The Court of Appeals so held and we agree.

The trial court and the Court of Appeals were right that violation of the rules of the road in (a), plus proximate cause, appeared as a matter of law. That those violations themselves resulted from Lemmon's unconsciousness also appeared beyond doubt. The only question, then, was whether Lemmon was legally excused by virtue of that unconsciousness. This question presents two issues: Is legal excuse available if it results from the actor's own fault? If not, does the actor relying on legal excuse have the burden of proving that the legal excuse claimed did not result from his own fault? We use "burden of proof" here in the sense of burden of persuasion.

■■■ Our decisions make the answers clear: the legal excuse relied on must not have resulted from the actor's own culpability, and the actor has the burden to prove that it did not—he is the one relying upon an excuse for a violation. One of the cases in which this court dealt with this problem is *Peters v. Rieck,* 257 Iowa 12, 18, 19, 131 N.W.2d 529, 532, 533. The court there quoted approvingly from *Lochmoeller v. Kiel,* 137 S.W.2d 625, 630 (Mo.App.):

"Even so, however, there may still be facts and circumstances present in a given case which will excuse a technical violation of a statute or ordinance and render it improper for the court to declare as a matter of law that the particular violation constituted actionable negligence, and so, when the plaintiff shows such violation, *it then devolves upon the defendant, if he desires and is able to do so,*

*to offer proof in legal excuse or avoidance of his failure to have observed the duty created by the statute or ordinance.* Ordinarily such an excuse would require the proof of something occurring *wholly without the fault of the person charged with the violation,* which had made it impossible for him to comply with the requirement of the statute or ordinance at the moment complained of, and which due care and prudence could not have guarded against." (Italics added.)

This court then stated:

Prior to *McMaster v. Hutchins,* 255 Iowa 39, 120 N.W.2d 509, some uncertainty existed as to which party had the burden of showing legal excuse. However, the cited case holds *the burden of proof is upon the defendant to establish legal excuse for violation of statute by a preponderance of the evidence* and plaintiff is not required to prove defendant's violation [is] not excused. (Italics added.)

The court held similarly in *Gibbs v. Wilmeth,* 261 Iowa 1015, 1020, 157 N.W.2d 93, 96. There, after restating the legal excuse doctrine of *Kisling v. Thierman,* the court said: "It is, of course, well settled that one whose own negligence has caused or contributed to a situation which makes it impossible for him to obey the law may not rely upon such conduct as a basis for invoking the doctrine." The court also there made clear that the defendant had the "burden of proving legal excuse" for her violation. Cases along the same line are *Bangs v. Keifer,* 174 N.W.2d 372 (Iowa), and *City of Cedar Rapids v. Moses,* 223 N.W.2d 263 (Iowa).

The decisions which we have cited deal with *statutory* negligence followed by claimed legal excuse under *Kisling v. Thierman.* But some of the specifications in (a) constituted *common law* negligence, with legal excuse asserted under the emergency doctrine. We think however that the rule is the same—the actor has the burden of proving the claimed emergency came about without fault on his part. As to the rule that the emergency must not arise from the actor's own culpability, see *Fagen Elevator*

*v. Pfiester,* 244 Iowa 633, 640, 56 N.W.2d 577, 581 (plaintiff's driver claimed emergency to excuse his contributory negligence— "The jury had no right to consider the [excuse] rule set out in the instruction at all if an emergency arose from negligence of plaintiff's driver."); *Carpenter v. Campbell Automobile Co.,* 159 Iowa 52, 65, 140 N.W. 225, 230 ("They ignore the thought that, if the excitement and confusion and the sudden and impending peril were produced by their own negligence, it would not serve as a shelter behind which they could hide against the consequences of their act"); Prosser, Torts, § 33 at 170 (4th Ed.) ("Furthermore, it obviously cannot serve to excuse the actor when the emergency has been created through his own negligence, since he cannot be permitted to shield himself behind a situation resulting from his own fault.").

As to the rule that the actor has the burden of proving emergency in the common-law negligence cases, a leading case is *Bletzer v. Wilson, supra,* 224 Iowa 884, 889, 276 N.W. 836, 839 (defendant claimed emergency excused him—"In the case at bar the court placed the burden of proving the non-existence of an emergency upon the plaintiff. We think this was error. It is true that in actions of this kind the burden of proof rests upon the plaintiff, but he certainly is not burdened with the necessity of proving that no emergency existed if he is not attempting to excuse his own negligent conduct by reason of a sudden and unexpected emergency not created by himself."). Accord: *Slate v. Hogback Mt. Ski Lift, Inc.,* 122 Vt. 8, 163 A.2d 851; *Pickett v. Cooper,* 202 Va. 60, 116 S.E.2d 48. See also *Kuntzelman v. Resh,* 3 Ill.App.2d 222, 121 N.E.2d 52; *Galliher v. Campbell,* 69 Oh.L.Abs. 378, 125 N.E.2d 758 (Ohio App.); *Chadwick v. Popadick,* 399 Pa. 88, 159 A.2d 907; *Gaines v. Campbell,* 159 Va. 504, 166 S.E. 704; *Somerville v. Dellosa,* 133 W.Va. 435, 56 S.E.2d 756.

We conclude that as to the specifications under (a), Lemmons could not rely on the emergency arising from the unconsciousness unless they proved by a preponderance

of the evidence that the emergency arose without fault on Lemmon's part—he acted with due care in undertaking to operate a car on the occasion in question notwithstanding his knowledge of his prior symptoms of headache, dizziness, and light-headedness, and of his seizure about two months before.

■ B. Plaintiffs alleged under (b) that based on the same knowledge, Lemmon was negligent in driving a car on the occasion in question. Since this was a charge of primary negligence by plaintiffs against Lemmon, plaintiffs had the burden of proving it. Rule 14(f)(5), Rules of Appellate Procedure. The ultimate issue under the specifications in (a) and in (b) was therefore the same. Under (a) the issue was whether Lemmon was at fault in undertaking to operate a car and *defendants* had the burden of proving he was not at fault, and under (b) the issue was whether Lemmon was at fault in undertaking to operate a car but *plaintiffs* had the burden of proof. Should the trial court have submitted that ultimate fault issue under (a) or under (b)?

The trial court concluded that as to (a), defendants sustained the burden of proof as a matter of law that Lemmon was not at fault in undertaking to drive. But then the court submitted the same ultimate issue under (b) in Instructions 9 and 10, with the burden on plaintiffs. This troubled the trial court and it troubles us. In its order on an amended new-trial motion, after referring to its in-trial ruling that (a) was out of the case, the trial court stated, "Perhaps in the interests of 'legal symmetry' that ruling should have ended the case, but the Court gave the plaintiffs the benefit of the doubt and submitted the case to the jury under the doctrines set forth in Instructions 9 and 10 which are quoted in the amended motion."

■ We agree with the Court of Appeals that the trial court erred at this point. First, as to the specifications under (a), Lemmons did not prove legal excuse as a matter of law. Lemmons had the burden of proof and while violation of the rules of the road appears here beyond question, sel-

dom does a party having the burden of proof satisfy that burden as a matter of law. *Davis v. Gatewood,* 228 N.W.2d 84 (Iowa). The court has also said, "Whether one established a legal excuse is usually, but not invariably, a jury question." *Gibbs v. Wilmeth, supra,* 261 Iowa 1015, 1020, 157 N.W.2d 93, 96.

■ Second, plaintiffs had the right under modern pleading to plead both (a) and (b). *Eaves v. City of Ottumwa,* 240 Iowa 956, 38 N.W.2d 761. Not only that but as the Court of Appeals held, plaintiffs were not required to prove more than necessary to entitle them to recover. Code 1977, § 619.9 ("A party shall not be compelled to prove more than is necessary to entitle him to the relief asked for").

Third, the trial court had both (a) and (b) before it, both (a) and (b) turned on whether Lemmon acted with due care in undertaking to drive, under (a) Lemmons had to prove that Lemmon acted with due care, while under (b) plaintiffs had to prove that Lemmon acted without due care. Under these circumstances and § 619.9, we hold as the Court of Appeals did that the trial court erroneously gave Instructions 9 and 10. In submitting the question of whether Lemmon acted with due care in undertaking to drive, the court should have placed the burden of proof on Lemmons under (a), and not submitted (b). If Lemmons failed to sustain their burden, the only other issue would be plaintiffs' damages.

C. The conclusion just reached entitles plaintiffs to retrial of their claims against Lemmons. Since those claims may be retried, we consider whether the court erred in excluding the proffered depositions of Dr. Miller insofar as plaintiffs' claims against Lemmons are concerned.

■ We conclude that portions of the depositions are admissible against Lemmons—or against plaintiffs for that matter. Plaintiffs' claims against Lemmons under (a) are not predicated on malpractice. They turn on whether Lemmon, with the knowledge he possessed, exercised the care of an ordinarily prudent layman in undertaking

to drive on the day he struck plaintiff. Hence none of Dr. Miller's opinions as to whether a person in Lemmon's situation should drive are admissible against Lemmons, for Lemmon had never heard them at that time. 57 Am.Jur.2d Negligence § 54 at 403 ("Concisely stated, negligence presupposes a duty of taking care, and this in turn presupposes knowledge or its equivalent."); 65 C.J.S. Negligence § 109 at 1172. The situation here is parallel to the cases to the effect a person cannot be held to have acted on the basis of statements of which he was unaware. *Bank of St. Helena v. Lilienthal-Brayton Co.,* 89 Cal.App. 258, 264 P. 546; *Nilsen v. Farmers' State Bank of Van Hook,* 178 Minn. 574, 228 N.W. 152; *Miller v. Williamson,* 128 Wash. 124, 222 P. 201; *De Swarte v. First National Bank,* 188 Wis. 455, 206 N.W. 887.

■ On the other hand, plaintiffs are not only entitled to show the automobile mishap itself and Lemmon's condition thereat; they have a right to show what was wrong with him at that time by introducing the portions of Dr. Miller's testimony as to the findings upon examination and surgery. Plaintiffs can develop the picture fully as to Lemmon's condition. This was one of the attendant circumstances of the automobile mishap. See 31A C.J.S. Evidence § 409(1) at 988.

II. *Directed Verdict as to Dr. Dieckmann.* The trial court and the Court of Appeals held that plaintiffs did not adduce substantial proof of negligence on Dr. Dieckmann's part.

A. A threshold question relates to the issue of Dr. Dieckmann's duty to plaintiff as a member of the public. Our opinions on the first appeal left that question undecided. Dr. Dieckmann asks us to resolve it now. He of course espouses the dissenting view on the first appeal, while plaintiffs advance the view in the special concurrence.

We find no necessity to resolve that issue today. After examining the evidence, we conclude that the trial court and Court of Appeals are right as to the insufficiency of the evidence even if the rationale of the special concurrence in the first appeal is accepted arguendo.

B. Another preliminary question in this part of the appeal involves the trial court's refusal to admit Dr. Miller's depositions into evidence. The trial court's basis for refusal was that Dr. Miller's opinions were not confined to the standard of care of a physician in Dr. Dieckmann's locality, citing *Sinkey v. Surgical Associates,* 186 N.W.2d 658 (Iowa). Although the trial court's reliance on this part of *Sinkey* is understandable, we think the court's position is untenable for reasons stated in the subsequent case of *Speed v. State,* 240 N.W.2d 901 (Iowa).

Fortunately however plaintiffs made a comprehensive offer of proof of Dr. Miller's depositions, and that testimony is before us. We find no necessity to decide whether the depositions are admissible on the claims against Dr. Dieckmann. We assume arguendo that they are, and we consider them with the other evidence in passing upon the trial court's ruling sustaining Dr. Dieckmann's motion to direct a verdict. Upon so doing, we find that the depositions do not change the result.

■ C. We thus arrive at the merits of the motion to direct. We consider all the evidence admitted and Dr. Miller's proffered depositions, and we view all such material in the light most favorable to plaintiffs. *Schneberger v. Glenn,* 176 N.W.2d 782 (Iowa).

Plaintiffs' cases against Dr. Dieckmann are based on the July 1969 incident. At trial the issue against Dr. Dieckmann ultimately came down to whether, in failing to advise Lemmon not to drive or in advising Lemmon he could drive, Dr. Dieckmann employed such care and skill as is exercised by the ordinary physician of good standing under like circumstances. The jury could find that Dr. Dieckmann did not advise Lemmon not to drive or he advised Lemmon he could drive. Dr. Dieckmann knew of the preexisting headaches, dizziness, and light-headedness. He knew of the one incident of unconsciousness and of Dr. Kyle's report, but he did not know of previous lapses into unconsciousness as none had occurred.

Would physicians of good standing under like circumstances advise patients not to drive?

We think that the answer to this question does not lie within the ken of laymen. This is not an obvious case like a burn on one part of the body when the surgery was on another part. *Wiles v. Myerly,* 210 N.W.2d 619 (Iowa). Plaintiffs believe that Dr. Miller answered the crucial question, but we cannot agree. Dr. Miller's testimony is insufficient at this point for two reasons. First, the questions generally dealt with what *he* would do in the matter of advising to drive or not to drive had he been presented with the patient on the occasion of the first unconsciousness. But the test was what the *ordinary physician of good standing* would do. *McGulpin v. Bessmer,* 241 Iowa 1119, 43 N.W.2d 121. Second, even at that Dr. Miller refused to be tied down. He kept answering that he would have to see the patient.

We have examined the other evidence, including Dr. Dieckmann's testimony, but proof which is substantial simply does not appear. Manifestly the kind of evidence which would have made a case would be the testimony of a physician, "In my opinion ordinary physicians in good standing under such circumstances tell patients not to drive." We have no such testimony. Nor can we fairly say, from the record, that similar testimony appears.

Plaintiffs say that physicians are reluctant to testify. That may be—or plaintiffs' problem may be that physicians of good standing do not advise not to drive under the circumstances presented to Dr. Dieckmann. We do not know what the medical profession has found the degree of risk must be before they tell a patient not to drive. Obviously every driver presents some risk—strokes, heart attacks, and some 50 causes of unconsciousness according to Dr. Kyle. The problem is that we do not have substantial evidence of what the medical standards are and this is so whether plaintiffs' lack of evidence results from professional reluctance to testify or otherwise. We cannot proceed on the basis of absence of evidence.

We thus reach the same result as in *Sinkey v. Surgical Associates, supra,* 186 N.W.2d 658 (Iowa). We hold on the merits of the claims against Dr. Dieckmann that the trial court and Court of Appeals rightly concluded plaintiffs did not make a case.

While we agree in general with the Court of Appeals' conclusions in the appeal, our disposition is not exactly the same. For simplicity we thus vacate the Court of Appeals' decision, and as to the district court judgment we uphold the part dismissing Dr. Dieckmann from the case and we overturn the part dismissing Lemmons and return the case to district court for a new trial as to them.

COURT OF APPEALS DECISION VACATED; DISTRICT COURT JUDGMENT AFFIRMED IN PART, REVERSED AND REMANDED IN PART.

All Justices concur except LeGRAND, J., who concurs in result.